MORRIS *v.* GRIFFIN.

Opinion delivered December 13, 1920.

1. RELIGIOUS SOCIETIES—JURISDICTION TO RESTORE CHURCH PROPERTY.—Courts may properly assume jurisdiction of a dispute between different factions of a church organization where property rights are involved, and in the exercise of such jurisdiction a chancery court will restore the possession of church property to the duly constituted church authorities, and will restrain those who are in rebellion from using it.

2. RELIGIOUS SOCIETIES—TITLE OF CHURCH PROPERTY.—In an action against an assistant pastor of the Catholic Church by the bishop who had built the church and leased it to the pastor of the church, defendant having been suspended from the ministry, it was no defense that the church was by mistake erected on the property of a third person, not a party to the suit, and not on property deeded to the bishop for that purpose.

Appeal from Little River Chancery Court; *James D. Shaver*, Chancellor; reversed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellee to obtain the right to the custody of a Catholic church house and cemetery in Little River County, Arkansas, and to restrain appellee from the further use thereof. The material facts are as follows:

On November 1, 1919, the parties whose names appear in the body thereof signed a contract which is as follows:

"Memorandum of agreement between the Right Rev. John B. Morris, D. D., as lessor, and Rev. Thomas Martin, as lessee, entered into on this the 1st day of November, 1919.

"The said lessor hereby leases to lessee the following property situated in the southwest quarter of the northwest quarter of section 27, township 12 south, range 32 west, towit: That part of said land upon which is located the Catholic Church, the cemetery and such ground adjacent thereto as in the judgment of the said lessee may be needed for church services and burial ground, it being intended to lease the said Rev. Thomas

Martin such portion of said land as is not now occupied and being used by M. W. O'Connell.

"This lease shall begin November 1, 1919, and expire November 1, 1924, the compensation and consideration therefor having been duly paid by the lessee, the receipt whereof is hereby acknowledged.

"It is further agreed that the lessee shall not commit or permit to be committed any waste upon said premises and to turn the same over at the expiration of this lease in as good condition as they are in at present, the usual wear and tear and damage from the elements excepted, notice to quit being hereby expressly waived."

The title to the property in the Catholic Church is in its bishops, and the church and cemetery in question were erected by a bishop of the Catholic Church, and it was thought to have been erected on the property described in the lease. The bishops of the Catholic Church have been in possession of the property in controversy for about fifty years. After this controversy arose a survey was made, and it was ascertained that the Catholic Church house and the Catholic cemetery were not situated on the land described in above contract, but that they were situated on an adjoining tract of land belonging to a Mrs. Taaffey, who is not a party to this suit.

T. J. Griffin was an assistant pastor in the Catholic Church, and as such was entitled to the use and possession of the church house and the cemetery.

According to the testimony of Bishop Morris, T. J. Griffin was duly suspended, and since that time, under the laws of the Catholic Church, Griffin has no facilities of jurisdiction or right to use the church property at all. Griffin has been attempting to use the building in question for services since his suspension. He has no right to use it for Catholic services since his suspension, and his use of it has been against the will of Bishop Morris, who has the right to it.

The chancellor was of the opinion that the appellant had not established his ownership of the church build-

ing because it was not situated on the land deeded to the bishop of the Catholic Church, and for that reason the complaint was dismissed for want of equity. The case is here on appeal.

*Hendricks & Snodgress,* for appellants.

1. It makes no difference for the purpose of this decision whether appellee Griffin was suspended or not. If he can occupy church property where he was placed by the bishop on property occupied by the church for more than thirty years, he can not set up as a defense that the bishop does not own the property. Appellee could not by his own act change the character of his tenure. He has no interest in the premises, and one can not go into possession of land and dispute the right of the one under whom he holds and enjoys possession. 24 Cyc. 942-3. The tenant is estopped to deny his landlord's title. 16 R. C. L. 651.

2. If such a tenant wishes to contest the landlord's title, he must surrender possession and then bring his action. 28 Ark. 154; 9 *Id.* 333; 35 *Id.* 548; 24 Cyc. 934, 936-7, 948. It follows that Griffin is estopped. 15 N. E. 536; 27 Ark. 527; 35 *Id.* 540; 33 *Id.* 195.

*Shaver & Locke,* for appellee.

The only question argued by appellant is that Griffin, being a tenant of Bishop Morris, is estopped to question or deny his title, but appellee was not a tenant nor was he a mere trespasser. The case was tried below that Griffin was a trespasser without right or authority, and the question of appellee being a tenant was not raised nor put in issue, and can not be raised here for the first time. This is not ejectment nor unlawful detainer, and if the bishop did not own the land and the real owner, Mrs. Taaffey, was not a party, Griffin had a right to hold services in the church if the members so decreed, and the chancellor properly dismissed the complaint.

HART, J. (after stating the facts). The decision of the chancellor was wrong. In *Monk* v. *Little,* 122 Ark.

7, it was held that courts may properly assume jurisdiction of a dispute between different factions of a church organization where property rights are involved, and that in the exercise of such jurisdiction a chancery court will restore the possession of such property to the duly constituted church authorities and will restrain those who are in rebellion to the constituted authorities from using it. This seems to have been recognized as the law by the chancellor, but he seems to have denied relief to appellant on the ground that he had not established his ownership to the church house and cemetery.

The record shows that the bishop of the Catholic Church holds the title to the church property and is entitled to the possession of it. It is true that the church house and cemetery in question are not situated on the property that was deeded to the Bishop, but are on an adjoining tract of land, the record title to which is in a person not a party to this suit. The record shows, however, that the church house was built by the Catholic Church and that it was thought to have been erected on the property of the church. It has been used as church property for more than fifty years. The lease contract shows that it was the intention of the bishop to lease the church house and cemetery to the pastor for church purposes, and it does not make any difference whether or not the land on which the church house and cemetery are situated belong to the bishop. It is sufficient that the title to the land is not in the lessee, or in Griffin, who was the assistant pastor until he was suspended by the bishop. Griffin was only entitled under the contract with Martin, the pastor, to the use of the church property by virtue of being an assistant pastor. He only had a right to use the property for church purposes, and after he was suspended he had no right to or any further use of the property. Therefore the chancellor should have granted the injunction prayed for in the complaint. Mrs. Taaffey, who holds the record title to the land on which the church house and cemetery are situated, is not a party

to the suit, and of course her rights are not in any manner concluded. It is sufficient to say that appellee had no right to question appellant's title to the property and the use thereof. *Washington* v. *Moore*, 84 Ark. 220, and *Dunlap* v. *Moose*, 98 Ark. 235.

It follows that the decree will be reversed and the cause remanded with directions to grant the relief prayed for in the complaint.