RAY v. STROUD.

4-6801                                    163 S. W. 2d 173

Opinion delivered June 22, 1942.

584

*S. L. Richardson,* for appellant.

*W. E. Beloate, Sr.,* for appellee.

GRIFFIN SMITH, C. J. The form of action is unlawful detainer. Stroud alleged that as owner he rented certain land to Ray, the latter having taken possession in 1936. A similar contract for 1937 and 1938 was made at a later date. Rent for 1939 was not paid, although appellant held over. Requisite notice to vacate was given.

The answer admitted the 1936 contract, but claimed there were no improvements on the property. It was agreed appellant should erect buildings not to exceed $100 in cost, and that Ray should retain possession until there had been reimbursement. Retention of 1936 rents did not suffice; therefore, says appellant, a new agreement was made for 1937. At the close of the second year of occupancy, rents had been insufficient to repay appellant, the deficiency amounting to $32.50.

It was then alleged that when appellant rented the land he did so upon appellee's false representations of ownership. Taxes for 1932 were not paid, and in 1933 there was forfeiture to the state. Default was certified to the land commissioner at Little Rock. The state's title was confirmed in 1936. Act 119 of 1935.

In February, 1938, appellant received information that appellee did not own the land. He immediately asked Stroud to take such steps as might be necessary to preserve the property. There is the assertion by appellant that he told appellee the rental agreement could not be continued unless title should be cleared. In March, 1938, appellant purchased from the state.

It is contended the rental agreement was void for want of consideration, appellee's title having been lost.

The question is, May one who enters under a contract creating the relationship of landlord and tenant challenge such landlord's title?[1]

Appellant, in support of his argument that Stroud was a trespasser in his attempt to exercise dominion over the land, relies upon *Prioleau* v. *Williams,* 104 Ark. 322, 148 S. W. 101, and other cases shown in the footnote.[2]

In *Bettison* v. *Budd,* 17 Ark. 546, 65 Am. Dec. 442, it was said that the rule prohibiting a tenant from disputing his landlord's title does not reach beyond the particular title under which the tenant enters, and if the landlord is divested of his title. ". . . the defendant may make it appear, and protect himself in a suit by his landlord for possession." It was further said that a tenant is not bound by the relationship to see that taxes are paid, ". . . and if the land be forfeited for the non-payment of taxes, and offered for sale [by the state], and the tenant becomes the purchaser, he may set up such title against his landlord."

The holding in *Pickett* v. *Ferguson,* 45 Ark. 177, 55 Am. Rep. 545, is that a tenant who is not under obligations to pay taxes may purchase, at a tax sale, the lands he is in possession of and may assert such title; and the sale, if otherwise valid, extinguishes the landlord's title and cuts off the lease. Also, a tenant may purchase the demised premises at an execution or judicial sale. In a subsequent controversy relating to possession or the payment of rent, it may be shown that the landlord's title has expired and that the estate has vested in the tenant.

These cases would control the instant appeal in Ray's favor but for testimony regarding transactions between appellant and appellee in 1938.[3]

---

[1] *Earle's Administratrix* v. *Hale's Administrator,* 31 Ark. 470; *Garrett* v. *Edwards,* 168 Ark. 243, 269 S. W. 572; *Burton* v. *Gorman,* 125 Ark. 141, 188 S. W. 561; *Morris* v. *Griffin,* 146 Ark. 439, 225 S. W. 634; *Smart* v. *Alexander,* 201 Ark. 211, 144 S. W. 2d 25.

[2] *King* v. *Duncan,* 62 Ark. 588, 37 S. W. 228; *Williams* v. *Petty,* 168 Ark. 642, 271 S. W. 9; *State* v. *Hicks,* 53 Ark. 238, 13 S. W. 704; *Eager* v. *Jonesboro, Lake City & Eastern Express Co.,* 103 Ark. 288, 147 S. W. 60; *Mushrush* v. *Downing,* 181 Ark. 85, 24 S. W. 2d 972, and other cases of like import.

[3] Each side asked for an instructed verdict, and did not request other instructions. This had the effect of taking the case from the jury.

Stroud testified, as did Ray, that cost of the house was to be paid from rents. However, Stroud's version was that after crops had been gathered in 1938 a settlement was had. It included an allowance of $42 to compensate the sum Ray paid for the state deed. Stroud testified that ". . . after we settled I owed him $32.41. I told him I would get the money at once and pay him if he would move out; or, if he stayed, he could hold it out of the rents. He said that was all right, and he turned the place back to me." [4]

Stroud's testimony was that he told Ray he could not retain the place during 1939, and that Ray replied, "All right, I don't know what else to do. I'll just stay here, I guess." When appellee later demanded possession, appellant refused to move.

Appellant testified that when he learned appellee did not own the land, he had his wife write appellee, who called for the purpose of discussing the matter. Appellee remarked that if anyone paid the taxes, he [Stroud] would take the property away from him. After procuring the deed appellant saw appellee and told him what had been done. Appellee is quoted as having said, "What are you going to do about it?" Appellant replied, "Give me back my money and take it." Appellee said "All right." Appellant then testified: "But he hasn't given the money to me yet." At another place in appellant's testimony there is this statement: "I had already agreed to let him have the place back if he paid me, but he has never paid me a cent."

The evidence establishes a contract between appellant and appellee by which appellant recognized appellee as his landlord after having acquired the state's title. If, in fact, the relationship of landlord and tenant existed after Ray procured his deed, he could not question

[4] Continuing his testimony, appellee said: "In a few days I came to town and saw Mr. Beloate and asked him what it would take to get this place straightened up. He told me he would have to see Ray's papers before he could tell exactly. So when we settled up [Ray] showed me his title. He got his cotton receipts and we settled on just what he had there, and it left me owing him $32.41. When I got up to leave I didn't think about getting the deed from him. I don't know whether he would have given it to me, or not. I didn't ask him for it then."

Stroud's right to rent the land, nor challenge appellee's right to possession on expiration of the term. After surrendering possession, appellant may seek to assert his title. He may sue in ejectment, or resort to equity in an effort to cancel appellee's claims to the property as a cloud on his title.

Judgment affirmed.