LINTON *v.* ERIE OZARK MINING COMPANY.

Opinion delivered February 7, 1921.

1. MINES AND MINERALS—FAILURE TO PAY ROYALTY—FORFEITURE OF LEASE.—Under a mine lease providing that the lessee every three months should deposit 10 per cent. of the proceeds of sales of products of the mine in a bank to the credit of the lessor, the lessee was not excused for failure to make such deposit because the products of the mine were sold by the lessee to pay the wages of laborers who got out the ore, and on account of such failure the lessor had a right to forfeit the lease.

2. CORPORATIONS—FOREIGN CORPORATION—DOING BUSINESS IN STATE.— A foreign corporation owning a mine in the State was not doing business in the State where it had leased the mine.

3. CORPORATIONS—DOING BUSINESS IN STATE.—The institution and prosecution of an action by a foreign corporation within the State is not the doing of business therein.

Appeal from Marion Chancery Court; *B. F. McMahan,* Chancellor; affirmed.

STATEMENT OF FACTS.

This appeal involves the correctness of a decision of the chancery court holding that a mining lease should be forfeited because of the nonperformance of its terms by the lessee and his assignees.

On January 1, 1916, the Erie Ozark Mining Company, a foreign corporation, executed a mining lease to W. A. Childs on its mine situated on the property in controversy which was to continue for ten years. Under the terms of the lease the lessee was to operate the mine to a reasonable extent at all times and to pay as rent ten per cent. of the gross receipts from all ores and products taken from the mines.

It was further provided that the lessee should render to the lessor once every three months a statement of all the ores and products sold and upon the receipt of any sales, to deposit to the credit of the lessor in the Bank of Yellville, at Yellville, Arkansas, ten per cent. thereof.

It was provided that the failure on the part of the lessee to operate the mine should render the lease void. The lease was executed on the 1st day of January, 1916, and it provided that it should continue from that date until the 1st day of January, 1926. On the 29th day of January, 1916, W. A. Childs executed a sublease to said property to Charles Trease and E. H. Ross for a period of five years. They in turn assigned their sublease to the Unity Mining Company. The Unity Mining Company assigned its sublease to I. N. Linton.

Subsequently, on July 17, 1916, W. A. Childs brought in the circuit court, an action of unlawful detainer against I. N. Linton to recover possession of the mine on the ground of the forfeiture of the conditions of his lease. On August 30, 1916, the defendant filed his answer to the plaintiff's complaint. On January 24, 1917, the defendant, Linton, filed his motion to make the Erie Ozark Mining Company a party to the suit, which was done. On the same day, he filed a cross-complaint against W. A. Childs. Linton also moved to transfer the case to the chancery court and his motion was granted.

The Erie Ozark Mining Company filed its answer and cross-complaint in the chancery court. It asks that

the lease be declared forfeited for nonperformance of the terms thereof by the lessee and his assignees.

On the part of the Erie Ozark Mining Company, it was shown that on the 20th day of January, 1917, it had served upon W. A. Childs and his assignees a notice that the mine lease should be declared void on the ground that the lessee and his assignees had failed to comply with its terms.

The cashier of the Bank of Yellville testified that no royalties had been paid to the bank on the mine in question for the Erie Ozark Mining Company since the 1st day of March, 1916.

On the part of I. N. Linton it was shown that the mine machinery was badly out of repair and that the mine was shut down for a part of the time in order to make repairs; that the water rose in the mine to a considerable depth; that it was necessary to pump out the water after the repairs were made before the mine could be again operated; that the products of the mine were sold to pay the expenses of running it and that the sublessee was given by Childs a certain number of days in which to shut down the mine and make the repairs. The testimony also shows, however, that the mine was shut down for a longer period than was agreed upon between the parties.

On April 23, 1918, the court entered a decree, whereby, among other things, the cross-complaint of Linton against the Erie Ozark Mining Company was dismissed for want of equity, and the original mining lease executed by the Erie Ozark Mining Company to W. A. Childs and persons holding subleases under him were canceled. The court was of the opinion that Linton and his assignors had failed to comply with the terms and conditions of the original lease, and that the lease should be canceled on that account.

A decree was entered accordingly, and to reverse that decree Linton has prosecuted this appeal.

*Williams & Seawell,* for appellant.

1. Appellee is a foreign corporation and was doing business in this State and has no right to defend as against the cross-complaint of appellant and the original plaintiff, W. A. Childs. Appellee was doing business in this State, and the lease was made in this State, and all its requirements and covenants were to be performed wholly within this State. 2 Elliott on Cont., §§ 112, 1142; 90 Ark. 351; 89 N. E. 193; 124 N. W. 1042; 66 Ark. 464; 12 C. J., § 31; 13 *Id.,* § 31 and note 6. The place of delivery is the place of contract. 2 Elliott on Cont., § 1117. A lease does not take effect until delivered to the lessee. 2 Elliott on Cont., § 4538; 24 Cyc., p. 905 (e). The lease was an Arkansas contract. Appellee had not complied with the laws of the State. The burden was on appellee as it was made an issue by appellant's answer to the appellee's cross-complaint. 128 Ark. 211. Proof of compliance could only be made by the introduction of a certificate issued by the Secretary of State. 132 Ark. 108. The evidence of articles of incorporation did not establish the right to do business nor of its right to defend or prosecute in this action.

The purported receipt for a franchise tax for the year 1917 was not admissible. 1 Moore on Facts, § 563. The chancellor erred therefore in granting any affirmative relief to appellee in declaring a forfeiture, cancelling the lease, giving it judgment for costs and allowing its defense to the claim of appellant.

2. The findings of the court is against the evidence, and the burden was on appellee to establish a forfeiture such as would annul the lease. 51 Pa. St. 232; 1 Mor. Min. Rep. 32; 68 Ark. 284-8.

Failure to pay royalties and taxes is not made a cause or condition of forfeiture in the lease. The only cause or condition of forfeiture mentioned in the lease was "failure to operate the said mining property or the abandonment of same."

Where in a lease causes of forfeiture are specified, it is not to be inferred that there are other grounds of forfeiture. 6 Mor. Min. Rep. 305; 43 S. E. 128; 41 Ark. 532. A breach of the covenants of a lease, in the absence of a clause to that effect, does not work a forfeiture. A forfeiture are construed strictly, and the facts to support the condition which was to work a forfeiture of the promisor's rights on a failure to comply with the provisions of the contract which was to render it void. White on Mines & Mining Rem., § 245. Contracts which provide a forfeiture are construed strictly, and the facts to support a forfeiture ought to be clear and explicit. 6 Mor. Min. Rep. 284, 299. Nonpayment of royalty or rent under the terms of this lease would not be a cause for forfeiture. 41 Ark. 532. Nor the failure to pay taxes.

The proof is abundant that on and prior to July 17, 1916, appellant and his assignors were in good faith carrying on operations. The evidence is undisputed that, for several years prior to the exclusion of this lease, mining operations on this property had been abandoned. It is also shown that the developments that had been made were below the water level and required pumps to work the one properties. The mill had deteriorated, and many of its parts removed or destroyed. The evidence is sufficient to warrant a reversal of the decree against appellant. Appellee is a foreign corporation, and its only holdings was mining property, and there is nothing to show that it had complied with our State laws. The court held the acts of Childs in dispossessing Linton to have been wrongful and found that appellant was in good faith complying with his lease agreements. He was ousted by law. Why does not the same principle apply in this case as excuses nonperformance of annual labor on mining claims and prevents a forfeiture? These principles are derived from equitable considerations and have often been applied to prevent loss of inchoate rights in property. 109 N. W. 508; 2 Lindley on Mines (3 ed.), § 634; 113 U. S. 534. See, also, 187 Fed. 779. Childs

occupied a relation of trust to appellee. He was dealing with its property. The proof shows appellee was fully aware of the steps and proceedings pursued and establishes collusion or conspiracy. 81 Ark. 173; 11 C. J., p. 1220. We think the maxim *pendente lite nihil innovetur* should be applied to the peculiar equities of this case. 16 Ark. 168.

The evidence proves beyond doubt that the value of the unexpired lease was of the value of $5,000, and that appellant and those from whom he received title had expended $5,000 or $6,000 in good faith in making repairs, improvements and development work, which were necessary and permanent, and appellant ought to have judgment against appellee and Childs for at least $5,000.

*J. C. Floyd,* for appellee.

1. There is no equity in appellant's bill on cross-complaint. The material allegations and averments are all specifically denied, and there is no proof of fraud or collusion or conspiracy to defraud Linton. There is nothing in our law that would prevent a foreign corporation, although not having complied with the laws of our State, from making defense in an action of conspiracy and collusion, as charged in appellee's cross-complaint, and the lease contract from appellee to Childs complained of or its validity or invalidity is not involved or referred to in the cross-complaint or appellee's answer. The prohibition against the maintenance of actions unless the corporation has complied with statutory conditions is confined expressly or by implication to actions on contracts, and does not extend to actions for torts committed in the State or to other actions growing out of the invasion of rights of property. Cook on Corporations 789; 60 Ark. 325; 30 S. W. 350; 28 L. R. A. 82.

2. The evidence sustains the allegations of forfeiture by appellee, and there is no error in cancelling the lease contracts.

The material allegations of forfeiture in the appellee's cross-complaint are not specifically denied and are

therefore to be taken as true, and no proof is necessary. No evidence was offered to show that any work was done under the lease given to Childs or the sublease executed by Childs after Linton was dispossessed. Kirby's Digest, § 6137; 41 Ark. 17; 46 *Id.* 132; 25 S. W. 73; 60 Fed. 254. Appellant's argument is wholly untenable.

The record shows affirmatively that at the time of the execution of the lease to W. A. Childs, appellee was not doing any business in the State and had not for several years prior thereto. 19 Cyc., p. 1267; 67 Kan. 599; 73 Pac. 909; 67 S. W. 45; 84 *Id.* 810; 85 *Id.* 31; 13 *Id.* 43; 55 Ark. 163; 54 Ark. 566.

A foreign corporation, although not having complied with our laws authorizing it to do business, may still own and hold property in the State, including lands, and it may sue to quiet title against a tax deed. Cyc. Dig. Ark. Dec., vol. 2, p. 655; 150 S. W. 398; 55 Ark. 635; 185 S. W. 1055; 95 Ark. 6; 128 S. W. 348; 19 Cyc. 1246, 1267-8.

In a suit by a foreign corporation to enforce a contract for lease of lands it is not a defense that the corporation has done business in the State and has not complied with the act of April 4, 1887. 55 Ark. 625; 18 S. W. 1055, cited in 24 L. R. A. 289.

It does not appear that the contract in this case was made in this State or in the course of business in this State. See, also, 183 N. Y. 98; 45 L. R. A. 538; 176 Mo. 179; 238 U. S. 185; 227 *Id.* 218; 90 Ark. 73; 19 Cyc. 1267-8. Appellee was not doing business in this State. 55 Ark. 163; 18 S. W. 43; 60 Ark. 120; 29 S. W. 34; 63 Ark. 268; 38 S. W. 902; 69 *Id.* 572; 117 *Id.* 775.

HART, J. (after stating the facts). The principal issue raised by this appeal is as to the correctness of the decree of the chancery court canceling the original lease made by the Erie Ozark Mining Company to W. A. Childs and his assignees. It will be remembered that Linton took a sublease from the assignees of Childs to the original lease. By the terms of the lease it was provided that the mine should be worked to a reasonable ex-

tent continuously during the term of the lease and that the lessee should account to the lessor every three months for the products mined and deposit in the Bank of Yellville, ten per cent. of the amount of the sales thereof to the credit of the Erie Ozark Mining Company.

The cashier of the bank testified that nothing had been deposited with the bank for the Erie Ozark Mining Company since the 1st day of March, 1916. Linton seeks to excuse the nonperformance of the lease in this respect by saying that the products of the mine were sold to pay the wages of the laborers who got out the ore. This was no excuse for the nonperformance of the contract. By the terms of the lease it was the duty of the lessee and his assignees to pay the expenses of operating the mine and to account to the lessor for its rent or royalties once every three months. This was not done, and the lessor, under the terms of the lease, had a right to give notice that it declared the lease forfeited for nonperformance of its terms and conditions by the lessee and his assignees.

Again it is insisted that the lessee was excused from nonperformance because the mining machinery got out of repair, and it was necessary to close down the mine in order to repair the same. Permission was granted to his lessee by Childs to close down the mine for a given number of days, in order to repair the machinery. But the chancellor was justified in finding that the mine was closed down for a greater length of time than agreed upon, and that there was no valid excuse for so doing.

It is also contended that the decree should be reversed because appellee is a foreign corporation and was not authorized to do business in this State. Appellee leased its mine and was not doing business in this State. In *Buffalo Zinc & Copper Co.* v. *Crump,* 70 Ark. 525, it was held that the institution and prosecution of an action was not doing business in this State within the meaning of the statute.

It follows that the decree will be affirmed.