### ARKANSAS ANTHRACITE COAL COMPANY *v.* STATE.

### Opinion delivered May 30, 1921.

TAXATION—DOMESTIC CORPORATIONS—FRANCHISE TAX.—Under Crawford & Moses' Dig., §§ 9799-9801, providing that every corporation organized and doing business under the laws of the State shall make a report to the Tax Commission, which shall report the same to the Auditor, who shall charge and certify to the Treasurer for collection from such corporation a tax of one-tenth of one per cent. on that part of its subscribed and issued capital stock employed in this State, *held* that domestic corporations owning coal lands which they have leased to others are liable to the tax, though they transact no other active business in the State.

Appeal from Pulaski Chancery Court; *J. E. Martineau*, Chancellor; affirmed.

*Rose, Hemingway, Cantrell & Loughborough*, for appellants.

The purpose of the act is only to levy a franchise tax upon those corporations which are doing business within the State, and as the appellant corporations are not doing any business, but are merely holding mineral rights for sale or lease, they are not within the purview of act No. 112, Acts of 1911, p. 67, or the amendatory act No. 122, Acts 1917. A foreign corporation who leases mines for a term of years is not doing business within the meaning of the statute. 237 U. S. 28; 228 *Id.* 295, 303-5; 220 *Id.* 145; 163 Pac. 148; 99 Kan. 671.

*J. S. Utley,* Attorney General; *A. L. Rotenberry* and *J. C. Marshall,* special counsel, for appellee.

The case cited by appellant, 227 S. W. 411, does not settle the question, nor are 237 U. S. 28 and others cited in point. See 91 N. E. 266; 194 S. W. 820; 163 Pac. 148; 96 N. Y. S. 745, affirmed in 97 N. E. 1194; 87 N. E. Rep. 434. The corporations were clearly liable for the tax, as they were doing business in the State.

McCULLOCH, C. J. Two consolidated actions are involved in this appeal, each instituted by the State of Arkansas against domestic corporations to recover unpaid franchise taxes under the statute which provides that every corporation "organized and doing business under the laws of this State for profit shall make a report in writing to the Arkansas Tax Commission," the form and substance of such report being specified, and that upon the filing of such report the Tax Commission shall report the same to the Auditor of State, "who shall charge and certify to the Treasurer of State for collection from such corporation * * * a tax of one-tenth of one per cent. upon that part of its subscribed or issued capital employed in Arkansas." Crawford & Moses' Digest §§ 9799-9801.

The articles of incorporation of the Arkansas Anthracite Coal Company define its purposes to be "to buy, own and sell lands, mineral rights, oil, gas and timber rights; conduct mining operations; to run a general

mercantile business; to manufacture lumber; to build, own and operate switches and tramroads; to buy, own and sell stocks of railroads and other corporations; to operate stone quarries; to manufacture stone and brick; to lay out cities.'' This corporation has a paid-up capital of $597,000, which is invested in mining rights and coal lands siutated in this State.

The articles of incorporation of the Arkansas Anthracite Mining Company define its purposes to be, ''the mining of coal and other minerals; the operation of railroads, steamboats, barges and tramroads; the buying, owning and selling of lands, merchandise, stocks in other companies; the selling of coal and other minerals, and the establishment of agencies for that purpose.'' This corporation has a paid up capital of $100,000, and invested the same as the other corporations.

The property owned by the two corporations constitutes a single coal field of about 15,000 acres. The coal company has made a lease of a tract of 328 acres of its mineral rights to a certain person, which said lease lapsed without any development work being done. The mining company leased 160 acres to an individual who assigned the lease to another corporation which has mined the coal and paid royalties to the mining company annually from the year 1918 up to the commencement of these actions. The coal company owns all of the capital stock of the mining company, which it received in consideration of a conveyance of 5,000 acres of its mineral right holdings to the mining company. This conveyance to the mining company was executed to enable the latter to mortgage the property for a loan of $50,000 to use in paying a bonus to a certain railroad company for building a railroad to the coal field. The reason for this was that it did not suit the purposes of the coal company to incur this obligation and the mining company was organized for the purpose of assuming the obligation under the arrangement just described. Neither of the corporations has transacted any other active business, if it

be held that the above-recited transactions constitute "active business." The trial court rendered a decree for the recovery from each of the corporations of the several amounts claimed by the State as franchise taxes.

It is the contention of learned counsel for the corporations that neither have been "doing business" within the meaning of the statute, and that neither is liable for the payment of the franchise tax under the statute. The contention is that the corporations have been and are holding the property in which the capital stock is invested merely for the purpose of doing business in the future, and that this does not fall within the terms of the statute. Counsel argue that the words "doing business," as used in the statute, should be interpreted to mean activity in the prosecution of the business specified in the charter. We do not so interpret the statute. The purpose is to exact the payment of a tax on the exercise of the franchise (*St. Louis S. W. Ry. Co.* v. *State,* 106 Ark. 321), and a corporation necessarily exercises its franchise in the investment of its capital in other property, for it derives its authority to make the investment from the franchise granted by the State. It can not function at all except under the powers granted to it in the franchise. The statute applies to all active corporations—those which are functioning and not those which are dormant. A corporation must be both organized and active in order to be liable for the franchise tax. A corporation may have been duly organized and may remain or become inactive and dormant, but, if it functions at all, it is, as before stated, alive and active. This view of the meaning of the statute is strengthened by the fact that the tax is laid according to the amount of capital stock "employed" in this State, which shows that the employment of capital stock was construed as constituting the doing of business in the exercise of the franchise.

This view is also very much strengthened by the provision in section 9820, Crawford & Moses' Digest, to the effect that all corporations, both domestic and foreign,

"qualifying * * * to do business in the State or organized under the laws of this State," shall pay an annual franchise tax of $10, where such corporation has no capital stock employed in this State or has less than $13,333 of its capital stock employed. This shows that the lawmakers intended to impose a franchise tax on all live corporations in this State, whether actively engaged in business or not"

In the recent case of *State* v. *Gloster Lumber Company,* 147 Ark. 461, we decided that a domestic corporation was, under a statute applicable "to all corporations doing business in this State," liable to general taxes on its stock, all of which was invested in property and business wholly situated and operated in another State, and in disposing of the question we said: "The theory of counsel for appellee is that a corporation organized under the laws of this State and domiciled here does not come under the requirement of the statute if it has no tangible property here and is not visibly operating some kind of business here in this State. That is not, we think, the correct interpretation of the statute. The words used in the statute are very broad. 'All corporations doing business in this State' is the language used. A corporation organized and domiciled here is necessarily doing business here if it is doing business at all. Its life and existence are here, and all of its business activities necessarily emanate here primarily if it functions at all. Its domicile is the fountain head of all its activities."

The same principle controls in the present case for the reasons already stated. Our decision in the recent case of *Linton* v. *Erie Ozark Mining Co.,* 147 Ark. 331, has no application, for it only reached to the question that a foreign corporation which had not filed its articles of incorporation and obtained permission to do business in the State was not, by merely owning property in the State and leasing it, doing business here within the meaning of the statute, which prohibits corporations from doing business in the State without complying with the laws

thereof. The decisions of the Supreme Court of the United States cited by counsel are not applicable, for they relate to a Federal statute imposing an excise tax on the net income of corporations doing business in any of the States or Territories of the United States. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *McCoach* v. *Minehill, etc., Rd. Co.*, 228 U. S. 295; *United States* v. *Emery*, 237 U. S. 28. In *Flint* v. *Stone Tracy Co.*, *supra*, which was followed in the later cases, the court said: "It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporations irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof * * *."

We conclude, therefore, that the decree of the chancery court is correct, and the same is affirmed.