VIETH *v.* MUSHRUSH LUMBER COMPANY.

Opinion delivered February 16, 1925.

1. CONTRACTS—EXECUTION.—A contract which is not required to be in writing is valid where it was reduced to writing and signed by one of the parties and accepted by the other party.

2. SALES—ACTION ON PURCHASE MONEY NOTE—DEFENSE.—In an action on a note given in part payment of the payee's interest in a mill in which the payee was to furnish the makers with orders for lumber and credit part of the proceeds on the note, evidence *held* not to warrant a finding that the makers could refuse to ship lumber or otherwise pay the note, keep the mill, operate for nearly two years without making additional payments, and then sell the mill and refuse to pay the balance due on the note.

Appeal from Union Circuit Court; *L. S. Britt,* Judge; reversed.

*J. W. Warren,* for appellant.

*Mahony, Yocum & Saye,* for appellee.

A contract not required to be in writing, if written and signed by one of the parties, is valid if accepted or adopted by the other. 91 Ark. 162. The jury necessarily found that there was a material alteration in the note. It was not incumbent on the defendant to show when the alteration was made. If it was made before the second party discontinued the shipment of lumber to the first party, the second party had the right to treat the contract as breached. 34 Ark. 312; 96 Ark. 184. The indorsement on the back of the note; "This note is given subject to a contract of even date herewith" made the note non-negotiable, and the defense of innocent purchaser does not apply. 14 A. L. R. 1121; 87 So. 332. If that indorsement was erased from the note, it was a material alteration. C. & M. Dig. §7891; 131 Ark. 185; 2 Am. Eng. Encyc. of L. 2nd Ed. 228; 1 Daniel, Neg. Inst. 151; 15 L. R. A. (N. S.) 612.

SMITH, J. Appellant, A. H. Vieth, brought this suit to recover on a note executed by the Mushrush Lumber Company to Otto T. Pfeffer, and which he alleged he had acquired before maturity, for value, as an innocent purchaser. The note was dated July 1, 1920, and due one year from date, and was for the sum of $4,986.88. The note bore interest at six per cent., and payments aggregating $1,448.17 had been made on it.

Appellant testified that he purchased the note on April 30, 1921, which was two months before the note matured, and he exhibited his canceled check, which was for the sum of $3,000, and which recited that it was given for the note sued on. He testified that this was the price paid for the note, and that he had no information that the validity of the note was questioned, but, on the contrary, there was indorsed on its back twelve different payments which had been made on it, aggregating $1,448.17, and that he thought the note was all right.

Pfeffer, the payee in the note, testified that he sold the note to appellant in good faith and without disclosing

to appellant that there was any question about the note, and he further testified that there was in fact no defense to it.

By way of defense on the part of the makers of the note, it was alleged that there was written on the back of it, at the time of its execution, this notation: "This note is subject to contract of even date herewith," and that this notation had been erased. The original of this note has been brought before us by a subpoena *duces tecum*, and it is insisted that we should find as a physical fact that no alteration of the note had been made. If the note has been altered, it was done with consummate skill, but appellees testified that the notation was indorsed on the note at the time of its delivery, and we cannot say, as a physical fact, that such was not the case. The jury, by its verdict, under the instructions given, found that the note had been altered, and we are unwilling to reverse that verdict as being contrary to the physical fact that the note had not been altered.

Mushrush, who signed the note, testified that the contract referred to in the note was prepared in triplicate, and that he signed each copy, and that he sent two of the signed copies to Pfeffer, but he admitted that Pfeffer had never returned a signed copy to him.

Upon this phase of the case, it may be said that the contract referred to was not one required to be in writing, and the law is that a contract not required to be in writing is valid if signed by one of the parties and is accepted or adopted by the other party. *Parker* v. *Carter,* 91 Ark. 162. The jury might have found from the testimony that the contract was accepted and adopted by Pfeffer, and that he became bound thereby. In this connection it may be said that the credits on the note were indorsed thereon in apparent conformity to the provisions of this contract.

The relevant portions of this contract are as follows: M. Mushrush and Mac Pepple, who are referred to in the contract as parties of the second part, together owned a one-half interest in the Diana-Mushrush Lum-

ber Company of Urbana, Arkansas, and Pfeffer owned the other half interest. Pfeffer sold his half interest to Mushrush and Pepple for $513.12, cash in hand paid, and the note sued on, and the assumption of all outstanding obligations of the partnership by the parties of the second part.

By article 4 of the contract it was provided that the note was "to be paid by allowing 12½ per cent. of the net mill receipts derived from all lumber shipments from Urbana yard, except as noted in article six, paragraph two."

Articles 5 and 6 of the contract read as follows:

"Article five.    Orders.

"Par. one.    First party agrees to furnish second party, to the best of his ability, with orders for lumber, at the best prices obtainable and suitable to the stock on hand at mill.

"Par. two.    Second party shall have the right to refuse any and all orders of first party, which he may see fit so to do; he shall ship all accepted orders as promptly as possible and fill same to the best of his ability.

"Article six.    Remittances on Shipments.

"On all shipments of lumber to him or his orders, first party agrees to remit to second party, promptly, on receipt of BL and invoice of each carload, 75 per cent. of the gross F. O. B. mill invoice of same. Remaining 25 per cent., less customary 2 per cent. cash discount, 8 per cent. selling commission to first party, and 12½ per cent. deduction to apply on payment of above note, to be paid promptly to second party 60 days from date of invoice.

"On all shipments of lumber to other than first party, second party shall, within ten days from date of shipment, remit 12½ per cent. of net mill receipts for same to first party, to apply as payment on note; except that second party shall have the right to ship not to exceed four cars per month to his own yards free of any deductions in favor of first party. On all such ship-

ments, second party shall mail to first party memorandum BL for his information."

Appellees insist that, for the reasons stated, appellant was not an innocent purchaser of the note, and that, this being true, they are absolved from liability on the note by reason of Pfeffer's breach of the contract in the particulars hereinafter set out. The testimony tending to show a breach by Pfeffer was to the following effect.

Mushrush testified as follows on that subject: "The lumber manufactured at Urbana was shipped to the Diana Lumber Company, of St. Louis, of which Pfeffer was president, and twelve or fourteen cars were so shipped, and Pfeffer credited the note with 12½ per cent. of the proceeds," and along in September the market began to break very badly, and the buyers began to cut down so on the grades, and cut the prices so, that we were not getting anything out of it, and we notified Pfeffer that, unless he would do better, we would quit the job."

In answer to a question how the lumber was shipped, the witness stated: "Pfeffer would send us an order to ship to his customers, and we would make the shipment, and our invoices would go in to Pfeffer direct." That they discontinued filling Pfeffer's orders on account of the low grades and prices he was giving.

Witness was asked if he recalled any shipments where Pfeffer had cut the grade too low or the sale price too low, and answered that he could not name any, as some of his records had been lost and other records burned. He was asked: "You do know that he did that, though?" and he answered, "Yes sir."

Witness further testified that shipments of lumber on Pfeffer's orders ceased about September 1, 1920, but that they continued to operate the mill until about June, 1922, at which time they sold it without having made any payments not indorsed on the note.

Pfeffer testified that he bought none of this lumber for the company of which he was president; that it was his business only to place orders, which appellee filled,

and that these orders were placed by the company of which he was president; that it was to his interest to obtain the best price and highest grades, as this increased the amount of the payments he would receive.

Appellant asked that a verdict be instructed in his favor, and asked for no other instructions. This the court refused to give.

On behalf of appellees, instructions were given to the effect that, if appellant did not become the owner of the note until after its maturity, or if the note, when executed, contained the proviso that it was subject to a contract of even date with the note, appellant was not an innocent purchaser and could recover nothing on account of the note if Pfeffer first breached the contract of purchase.

There was a general verdict in favor of appellees, and from the judgment thereon is this appeal.

We think no sufficient excuse was shown by appellees for not paying this note, and that, under the case as made, a verdict should have been directed for appellant. There was no definite testimony that any lumber was of a particular grade, and was sold as a lower grade, nor was there any testimony that the lumber was sold at one price and was reported as sold at a less price. Pfeffer was, in effect, a sales agent, and not a purchaser, and there was no testimony that he did not correctly report and account for sales as made. When Mushrush was asked why he said Pfeffer was grading the lumber too low or selling it too cheap, his answer was "because the returns we were getting were not sufficient to warrant us to ship the lumber."

The testimony on the part of appellees, as well as on that of appellant, was that the lumber market was very dull; that buyers were more exacting in grading and closer in prices, and appellees testified that grades and prices which Pfeffer was getting were so low that they could not afford to fill his orders. Pfeffer did not refuse to continue to place orders and to credit the proceeds of sale as required by the contract, and we think

the testimony did not warrant the finding that appellees could refuse to ship lumber or otherwise pay the note, keep the mill, operate it for nearly two years without making additional payments, and then sell the mill and refuse to pay the balance due on it as evidenced by the note sued on.

Paragraph 2 of article 5 of the contract expressly conferred on appellees the right to refuse any orders received from Pfeffer, and article 6 gave them the right to sell elsewhere, provided 12½ per cent. of the net proceeds of such sale were paid to Pfeffer to be credited on the note. This right was exercised from September 1920, to June, 1922, when the mill was sold.

We think a verdict should have been directed in favor of appellant, and the judgment of the court below will be reversed; and, as the case appears to have been fully developed, judgment will be rendered here for the face of the note and interest, less the credits thereon.