MUSHRUSH *v.* DOWNING.

Opinion delivered February 24, 1930.

*Maddox & Greer,* for appellants.

*Horace Sloan,* for appellees.

SMITH, J. A. H. Vieth recovered a judgment against the Mushrush Lumber Company, a corporation organized under the laws of the State of Illinois, in this court on February 16, 1925 (167 Ark. 669, 269 S. W. 44), which was duly assigned on March 31, 1927, to W. P. Downing,

and a certified copy of the judgment, with the assignment thereof, was later filed in the office of the clerk of the circuit court of Poinsett County, in which county the corporation owned certain real estate. Downing later assigned a half interest in the judgment to Jess Brown.

The corporation was organized under the laws of Illinois on January 6, 1913, and on March 14, 1914, was authorized to do business in this State by filing a certified copy of its articles of incorporation and designating an agent upon whom process might be served. For the nonpayment of its franchise tax to the State of Illinois the Secretary of State certified the corporation to the Attorney General of that State for dissolution, but no action was taken by the Attorney General to forfeit the charter of the corporation. On April 25, 1923, the Governor of this State, acting under act 158 of the Acts of 1923, page 132, declared the corporation to have forfeited its authority to transact further business in this State on account of the nonpayment of the Arkansas franchise tax. The principal, but not the only, stockholders of the corporation were Mark Mushrush, who died intestate June 19, 1926, survived by his widow and several children, and W. M. Pepple, who died testate April 11, 1926, and whose estate was devised to his widow.

On February 3, 1927, Asa Mushrush filed suit in the chancery court of Poinsett County against the widow and heirs of Mark Mushrush, in which he alleged that Mark Mushrush had become indebted to him in a sum evidenced by two notes, to secure the payment of which a mortgage was given on certain lots in the town of Weiner, in Poinsett County, and it was prayed that this mortgage be foreclosed, as the notes had not been paid. These are the lots to which the corporation had the record title.

On April 26, 1927, another suit was filed in the chancery court of Poinsett County by W. P. Downing and A. H. Vieth, for the use of W. P. Downing, against the Mushrush Lumber Company, the widow and heirs of Mark Mushrush, the widow of W. M. Pepple, Jesse S.

Baker, a stockholder in the corporation, and Asa Mushrush, which contained the following, among other, allegations: The facts herein stated were alleged, and it was further alleged that the lots in the town of Weiner, mortgaged to Asa Mushrush by Mark Mushrush, were not the property of Mark Mushrush, but were the property of the Mushrush Lumber Company, and were subject primarily to the payment of its corporate debts. It was prayed that the real estate in the county be declared to be subject to the lien of the plaintiff's judgment, and that the mortgage from Mark Mushrush to Asa Mushrush be canceled. Brown was later made a party to this proceeding.

These cases were consolidated and tried together, and the decree of the court below, from which this appeal comes, canceled the mortgage from Mark Mushrush to Asa Mushrush, and the correctness of this action is the question in the case.

Testimony was offered on behalf of Asa Mushrush to the effect that the assets of the corporation were divided between Mark Mushrush and Pepple, who were the principal stockholders, and that Mark Mushrush took the Arkansas assets of the corporation, while those in Illinois were given to Pepple. No deed was produced from the corporation to Mark Mushrush, and no competent or sufficient testimony was offered to prove that one had ever been made; in fact, the testimony to the effect that such a deed had been executed consisted principally in the proof of declarations of Mark Mushrush, that he owned all the Arkansas property which had once belonged to the corporation, and that he acquired this title by the division of the corporate assets between himself and Pepple, who, together, had acquired and owned all the stock of the corporation.

It is the insistence of Asa Mushrush, who was never at any time a stockholder in the corporation, that his mortgage from Mark Mushrush is valid and superior to the judgment lien, and, further, that Brown could not

and did not acquire any interest in the judgment lien, for the reason that, at the time when he claimed to have done so, he was in possession of the Weiner property as the tenant of Mark Mushrush, and, as a tenant, he could not purchase a lien on the demised premises and claim thereunder before a surrender of the possession to his landlord, which he had not done.

It appears that Brown took possession under a written lease executed in the name of the corporation, but Asa Mushrush testified that Brown told him that he took the lease from Mark Mushrush, but had it changed in the name of the corporation, because the record title to the property was in the corporation.

A number of interesting questions are raised in the briefs of opposing counsel, but we find it unnecessary to consider many of them to dispose of this appeal.

Under the laws of Illinois, the cancellation of a corporate charter by the Secretary of State does not dissolve the corporation, but it is a mere declaration of that fact as a preliminary administrative act upon which a dissolution suit can be based. *People* v. *Rose,* 207 Ill. 352, 69 N. E. 762; 8 Fletcher, Cyclopedia Corporations, § 5445, p. 9060; 4 Harker's Illinois Statutes Annotated (1919), §§ 118-123, p. 4542 and 4543. But it also appears that under the laws of that State the corporate existence is continued, even after dissolution, for the purpose of enforcing corporate liability. 4 Harker's Illinois Statutes Annotated (1919), § 79, p. 4534.

The judgment here sought to be enforced is based on notes dated July 1, 1920, (167 Ark. 670, 269 S. W. 44) which was prior to the date of the certificate of the Secretary of State of Illinois showing the delinquency in the payment of the franchise tax in that State; and it is clear that the certificate of the Governor of this State, above referred to, was not an attempt to dissolve this Illinois corporation. Indeed, he could not have done so. Section 741 of chapter "corporations" in 7 R. C. L., p. 733. The only effect of this certificate was to withdraw from the

foreign corporation authority to transact business in this State, and being sued was not "doing business" in violation of our statutes regulating foreign corporations operating in this State. *Linton* v. *Erie Ozark Mining Co.*, 147 Ark. 331, 227 S. W. 411; *Buffalo Zinc & Copper Co.* v. *Crump*, 70 Ark. 525, 69 S. W. 572, 91 Am. St. Rep. 87.

We think the decree of the court below was correct. It is undisputed that the corporation, the judgment defendant in the original Veith case (167 Ark. 669, 269 S. W. 44), owned the town property, and, as we have said, there was no sufficient showing that it had ever been conveyed by the corporation to Mark Mushrush. Proof of the self-serving. declarations of Mark Mushrush, to the effect that he had acquired this title (and there was no attempt to prove that a deed had been executed to him from the corporation) is ineffective to show that fact. *Arkmo Lbr. Co.* v. *Cantrell*, 159 Ark. 445, 252 S. W. 901; *Davis* v. *Falls*, 172 Ark. 314, 288 S. W. 723; *McCurry* v. *Griffin*, 170 Ark. 421, 279 S. W. 995; *Strickland* v. *Strickland*, 103 Ark. 183, 146 S. W. 501; *Waldroop* v. *Ruddell*, 96 Ark. 171, 131 S. W. 670.

The mortgage does not purport to be the act and deed of the corporation, and Mark Mushrush had no power to mortgage the corporate property as an individual, whatever his interest in the corporation may have been. Section 2449 of chapter on Corporations in 14A C. J., p. 532; *Red Bud Realty Co.* v. *South*, 96 Ark. 281, 131 S. W. 340.

There is nothing in the contention that Jess Brown could not acquire an interest in the judgment, by reason of his tenancy. In the first place, the relation of landlord and tenant was not shown between Brown and Mushrush individually.

In the case of *Connolly* v. *Rosen*, 144 Ark. 442, 222 S. W. 716, it was held (to quote a headnote) that "The rule which forbids a tenant to dispute his landlord's title and right to possession without delivering possession

has no application where defendant in possession denies that a tenancy ever existed."

But, even though the existence of a tenancy were conceded or established by the testimony, we perceive no reason why Brown, as a tenant, might not buy an interest in the judgment, or buy the entire judgment.

At § 143, chapter on Landlord and Tenant, in 16 R. C. L., p. 656, it is said:

. "There is authority for the position that there is such a confidential relation between a tenant and his landlord as will preclude the tenant from purchasing an adverse title, without notice to his landlord, and that where he does so it will be presumed that his purchase was made for the benefit of and to protect the landlord's possession. On the other hand, according to the better view, the relation does not itself preclude a tenant from purchasing a title adverse to that of his landlord; while there are fiduciary relations where one may not purchase and hold for himself an adverse interest, but the purchase will inure to the benefit of the person toward whom he holds the confidential relation, the relation of landlord and tenant does not as a general rule fall within this class. And, *a fortiori,* if a lessee under a defective title is disturbed by a party having a paramount title, he is not restrained by his lease from purchasing the paramount title, without the consent of his lessor, although he had not been evicted or ousted."

In the note to the text quoted, the case of *Lausman* v. *Drahos,* 10 Neb. 172, 4 N. W. 956, is cited as the authority for the position that there is a confidential relation between a tenant and his landlord which precludes the tenant from purchasing an adverse title, without notice to his landlord, and that, when he does so, it will be presumed that his purchase was made for the benefit of and to protect his landlord's possession. But this court expressly declined to follow that case in the case of *Pickett* v. *Ferguson,* 45 Ark. 195, and referred to it as a case standing alone as supporting that doctrine. See also *Dennis* v.

*Tomlinson,* 49 Ark. 577, 6 S. W. 11; *Swift* v. *Ivery,* 147 Ark. 141, 227 S. W. 600.

We therefore adhere to what the text quoted designates as the better view, that the relation of landlord and tenant does not itself preclude a tenant from purchasing a title adverse to that of his landlord, and therefore that Brown had the right to purchase an interest in the judgment against the corporation.

We are of the opinion that the decree of the court below is correct, and it is therefore affirmed.