94 P.2d 105

**STATE ex rel. STATE CORPORATION COMMISSION v. OLD ABE CO.**

No. 4418.

Supreme Court of New Mexico.

Sept. 12, 1939.

Frank H. Patton, Atty. Gen., and Richard E. Manson, Asst. Atty. Gen., for appellant.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellee.

MOISE, District Judge.

The State of New Mexico, on relation of the State Corporation Commission, appeals from an adverse ruling, in an action wherein it sued the Old Abe Company to recover franchise taxes in the amount of $60.00, levied and assessed against the corporation for the year 1937, under Chapter 116 of the 1935 Session Laws.

The case was tried below on the appellant's complaint, appellee's answer, and a stipulation of facts. These documents disclose the facts to be as follows: That the appellee is a corporation organized under the laws of New Mexico, that it has authorized, issued and outstanding 12,000 shares of fully paid up stock of the par value of $5 per share, and having a total par value of $60,000; that assets consist of certain patented lode mining claims, claims to unpatented placer mining claims and coal lands, all located in the State of New Mexico, together with personal property, and improvements to be used in connection with the same; that said appellee corporation was organized for the purpose of mining said claims and lands, and for the purpose of extracting therefrom coal and other minerals; that during the year 1937, the only activity of appellee was to hold a stockholders' meeting for the purpose of appraising the corporation's financial condition and electing officers; the holding of an annual directors' meeting for organization purposes only; the borrowing of sufficient money to pay taxes, and the actual payment of taxes; the filing of reports and tax schedules required by governmental agencies; and the filing of notice to hold an unpatented placer mining claim pursuant to Act May 18, 1933, 48 Stat. 72, U.S.C.A. Title 30, Section 28a note. That appellee received no income during the year 1937, maintained no office, except as required by law to maintain corporate existence, and paid no salaries, although a nominal salary was voted to the president, but not paid.

Appellee defended on the ground that it was not engaged in business during the year 1937, so as to be liable for the tax, and it was the contention of the appellant that the tax accrued whether or not appellee engaged in any business activity, since the tax is one levied on the "privilege of carrying on, doing business, or the continuance of its charter within this State", and not upon the doing of business, and secondly, that if the doing of business is a condition to liability for the tax, the appellee was actually engaged in doing business, so the liability attached.

We thus have two questions presented for decision, viz:

1. Does the tax levied by Chapter 116 of 1935 Session Laws attach whether or not the corporation is carrying on any of the activities for which it was incorporated; and

2. If the tax is conditioned on the carrying on of corporate activities, was the appellee so engaged so as to be liable for the tax during the year 1937?

The material portions of the Act to be construed are as follows:

"An Act to Levy an Annual Franchise Tax on Domestic and Foreign Corporations for Profit Doing Business in This State, for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State; to Provide for Reports to the State Corporation Commission by Said Corporations, and to Provide for the Determination and Collection of Said Tax; to Provide for Penalties for Failure to Comply with the Provisions of This Act; to Provide for the Payment of the Same into the 'Relief Fund', and to Repeal Chapter 10, of the Laws of 1935 (Senate Bill 47, Approved February 5, 1935.)

"Section 1. * * * The term 'domestic corporation for profit' means any corporation, joint stock company or association organized under the laws of the State of New Mexico, except state banks, insurance companies, and those corporations organized and conducted for religious, charitable, educational or social purposes, and not for profit. * * *

"Section 2. Every domestic or foreign corporation for profit engaged in any business in this State, beginning with the calendar year 1935, shall pay to the Corporation Commission on or before the first day of May of each year, an annual franchise tax at the rate of One ($1.00) Dollar for each One Thousand ($1,000.00) Dollars, or fraction thereof, of the par value of that proportion of its authorized and issued capital stock represented by its property and business in this state, to be assessed by the State Corporation Commission as provided in this Act. The tax hereby imposed shall be in addition to all property taxes and other taxes and fees now or hereafter required by law."

The controversy arises because in the title to the Act it is stated that the tax is one on "the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State", whereas, Section 2 levies the tax upon "every .domestic * * * corporation for profit engaged in any business in this State, * * *."

The same question was discussed in the case of Lowden v. State Corporation Commission, 42 N.M. 254, 76 P.2d 1139, 1140, recently decided by this court, but in that case there being an even division in the court, the proposition was not decided, it being stated there by Mr. Justice Brice, concurred in by Mr. Justice Bickley: "It is a privilege tax, not upon the right to be a corporation or to exist, and not on the actual doing of business, but for the right or privilege to do the business and exercise the franchise granted by its permit to do business in this state, whether it transacts business or not; that being a matter about which the state is not concerned in assessing the tax."

Mr. Justice Sadler, in an opinion concurred in by Mr. Justice Zinn, took a different view, saying: "It will thus be seen that I disagree with the main opinion in its conclusion that this is a tax on the right to do business whether any business is transacted or not. In my view, the tax is essentially on the enjoyment of the privilege, the exercise of the corporate franchise, rather than upon the mere privilege itself."

Being again called upon to decide the proposition, we undertake a re-examination of the act, in an effort to determine the intention of the legislature, and to give the same effect as intended, this being the proper test in circumstances such as we have here. State v. Southern Pac. Co., 34 N.M. 306, 281 P. 29.

Disregarding for the moment the language of the title to the present act, we find that many states, as well as the United States, have franchise tax acts, none of which have been determined to be identical with ours, but which should be of assistance in arriving at an understanding of our own act.

The United States in 1909 passed a "corporation tax" law. 36 Stat. 11, 112–117, Chap. 6, U.S.Comp.Stat.Supp.1909, pp. 659, 844–849, which law was first before the Court in the case of Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 346, 55 L. Ed. 389, Ann.Cas.1912B, 1312.

The law there in question was not unlike Chap. 116 of 1935 Session Laws, providing "That every corporation * * * organized for profit * * * and engaged in business in any State * * *, shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * *."

The Court held that the tax was one levied on the conducting of a business, and that such conduct of the business was a necessary condition to liability for the tax. Quoting from the decision:

"While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the law-making power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company. It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business, and with respect to the carrying on thereof, in a sum equivalent to 1 per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, when imposed in this manner it is a tax upon the doing of business, with the advantages which inhere in the peculiarities of corporate or joint stock organizations of the

character described. As the latter organizations share many benefits of corporate organization, it may be described generally as a tax upon the doing of business in a corporate capacity. In the case of the insurance companies, the tax is imposed upon the transaction of such business by companies organized under the laws of the United States or any state or territory, as heretofore stated."

Decided the same day as the case of Flint v. Stone Tracy Co., supra, was the case of Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 362, 55 L.Ed. 428, holding that the corporation there in question "was not doing business in such wise as to make it subject to the tax imposed by the act of 1909." The same result was reached under the Federal Statute in the case of McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, and in the case of United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825.

In New York a statute, Tax Law, Consol.Laws, c. 60, § 182, imposing a tax "For the privilege of * * * exercising its corporate franchises in this state" upon "every corporation, joint-stock company or association, doing business in this state" was held to be applicable only when business was actually conducted, the court saying in People ex rel. Lehigh & N. Y. R. Co. v. Sohmer, 217 N.Y. 443, 112 N.E. 181: "The language of the statute, as it has been since 1906, does not warrant the assertion of the respondent. It is, in the particular under consideration, precise, clear, and unambiguous. It states plainly and accurately that every corporation doing business in this state shall pay the tax for the privilege of doing business or exercising its corporate franchises. It creates, without dubiety, the liability from the two facts of (a) doing business in the state (b) in a capacity other than individual. The courts have so declared." (Citing cases.)

In Georgia a tax levied by a statute providing that "All corporations organized under the laws of Georgia, and doing business therein, (with certain exceptions) in addition to all other taxes now required of them by law, are hereby required to pay each year an annual license or occupation tax * * *", was held not to be due or collectible from a corporation which was not "doing business". Harrison v. Forsyth Hunter Co., 170 Ga. 640, 153 S.E. 758. To the same effect is Norman v. Southwestern R. Co., 42 Ga.App. 812, 157 S.E. 531.

In a note at 40 A.L.R. 1451, are gathered cases involving the question of whether or not "holding companies" are "doing business" so as to be liable for taxes levied on corporations under the Federal law. From these cases it can be seen that pure holding companies are held not to be "doing business" so as to be liable, and that "doing business" is in every case necessary to liability.

The appellant, in addition to relying upon the views expressed by Mr. Justice

Brice in Lowden v. State Corporation Commission, supra, cites as authority the Michigan case of In re Detroit Properties Corp., 254 Mich. 523, 236 N.W. 850, 851, as supporting its position that actual engaging in business is not a condition to liability for the tax levied.

The statutes there involved provided that every corporation "shall * * * for the privilege of exercising its franchise and of transacting its business within this state, pay * * * an annual fee * * *," Comp.Laws Mich.1929, § 10140, and in the case cited it was held that actual transaction of business by a corporation was not a condition of the tax, the tax being an "excise tax, not upon the right to be a corporation, but upon the activities of the corporation in exercise of its corporate franchise, or, as it is sometimes expressed, upon the franchise 'to do,' not upon the franchise 'to be.'"

This view was followed in the case of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, the court pointing out that it was bound by the interpretation placed upon the act by the Michigan Court in In re Detroit Properties Corp., supra. Again in the case of Detroit International Bridge Co. v. Corporation Tax Appeal Board, 287 U.S. 295, 53 S. Ct. 137, 77 L.Ed. 314, 315, this rule was adhered to. However in this later case, it is pointed out that the statute there construed (differing thus from our own) provides "It is the intent of this section to impose the tax herein provided for upon every corporation, foreign or domestic, having the privilege of exercising corporate franchises within this state, irrespective of whether any such corporation chooses to actually exercise such privilege during any taxable period." Pub. Acts, Mich. (1921), No. 85 as amended by Pub. Acts, Mich. (1929), No. 175, 2 Comp. Laws, Mich., 1929, § 10140.

An examination discloses that the Michigan statute differs further from the New Mexico statute in that it recites in its body that it is imposed upon every corporation (1) *"organized"* (2) "or doing business" in Michigan, and is levied "for the privilege of exercising its franchise and of transacting its business within this state", and also that the tax is imposed on every corporation "having the privilege * * * irrespective of whether any such corporation chooses to actually exercise such privilege * * *"; whereas, it appears the New Mexico statute is simply imposed upon "every domestic or foreign corporation * * * engaged in any business in this State." That the differences between the Michigan statute and our own have dictated the conclusions reached in cases construing the Michigan statute is demonstrated by a mere reading of two cases arising under it. See Detroit International Bridge Co. v. Corporation Tax Appeal Board, cited supra, construing the statute as amended by Pub.Acts Mich., 1929, No. 175, and In re G. H. Hammond Co., 246 Mich. 179, 224 N.W. 655, 656, construing Pub.Acts, Mich., 1921, No. 85, as it existed prior to the 1929 amendment.

In the Hammond case the court's decision turned on one of the very differences noted above between the Michigan statute and our own. The court said: "Much reliance is also placed by the appellant on the case of People ex rel. Lehigh & N. Y. R. Co. v. Sohmer, 217 N.Y. 443, 112 N.E. 181. The importance of this authority is stressed on the ground that the New York corporation tax statute is 'similar' to that of Michigan. For our present purpose, we do not find it at all similar, and in the lack of similarity is found the reason underlying the New York decision. The statute of that state imposes a privilege fee only upon those corporations 'doing business in' New York. The Michigan statute provides that every corporation (1) organized, or (2) doing business under the laws of this state, shall pay excise tax. The appellant falls under the first subdivision as a corporation 'organized' under the laws of this state. * * *"

Appellant also cites and relies on the case of New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 168, 68 L.Ed. 405. In that case the United States Supreme Court was passing on Sec. 209 of the Tax Law of New York, Consol.Laws, c. 60, which provided: "For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation * * * shall annually pay in advance for the year beginning November first * * * an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income for its fiscal or the calendar year next preceding." And be-cause no New York cases were found interpreting the statute, placed its own construction thereon, recognizing, however, that the New York decisions, if there were any, would be controlling.

"On the main question the Circuit Court of Appeals rightly recognized that the construction of the state law by the State Courts should control, but found nothing nearer than People ex rel. Mutual Trust Co. v. Miller, 177 N.Y. 51, 69 N.E. 124, where a different statute was held to tax the privilege of carrying on the business as actually exercised and therefore to create an apportionable liability. If the State Court should decide that the present act was to be construed in the same way we should bow, but until it does so we must regard the meaning as tolerably plain. The amount to be paid is not determined by the business done during the period taxed but by the net income of the year before. It is made a legal duty, by what the Courts below rightly held to be a penalty, to pay the tax in advance. When the law discussed in the Mutual Trust Co.'s Case, supra, was amended so as to provide that the tax should be payable in advance, the Court of Appeals said that the amendment changed the character of the tax and that the grounds of the former decision were no longer applicable. People ex rel. New York, Cent. & H. R. R. Co. v. Gaus, 200 N.Y. 328, 93 N.E. 988. It hardly can be supposed that if the tax had been paid the State would recognize a claim for a proportionate return. We are of opinion that the tax is a tax upon the right confer-

red, not upon the actual exercise of it, that it was due when the petition in bankruptcy was filed, New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, [287], and that the claim of the State for the whole sum should have been allowed."

We have already cited and quoted from People ex rel. Lehigh & N. Y. R. Company v. Sohmer, supra, a New York case from the Court of Appeals of New York, decided in 1916, interpreting Sec. 182 of the Tax Law of New York, which section clearly is more comparable to our own act than the section passed on in New York v. Jersawit, supra, since it includes the words "doing business in this state," which words are comparable to "engaged in any business" contained in Chapter 116.

Appellant lastly cites and relies on the dissenting opinion of Justice Cardozo in the case of Anglo-Chilean Nitrate Sales Corp. v. State of Alabama, 288 U.S. 218, 53 S.Ct. 373, 375, 77 L.Ed. 710, 711, wherein an Alabama statute was under consideration. The opinion of the court points out that Alabama exercised its taxing power under the statute on the theory that the corporation was actually doing business in Alabama, and points out that the statute in Alabama differs from the Michigan statute which was interpreted as being imposed for "the mere right to transact business". We find nothing in the dissent of Justice Cardozo indicating that actual engaging in business was not a condition to liability for the tax, but on the contrary that it was: "True indeed it is that the corporation will be relieved of the burden if no business is transacted and no capital employed [citing cases]. If the state has conferred a privilege which it is competent to tax, the competence is not lost, and the validity of the tax destroyed, because the privilege is to be free when the corporation is inactive."

Our attention has not been directed to, and neither have we discovered, any case in which under statutes such as ours it has been held that the words "engaged in business" did not mean actively doing some acts other than the mere retention of corporate status.

Only on one basis could a different rule be contended for, and that must be based on the fact that the title to the act by its language purports to levy a tax "for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State." If there was nothing contained in the enactment which led us to a contrary conclusion we might, basing our conclusions on the language of the title, arrive at the same result as the United States Supreme Court did in the case of New York v. Jersawit, supra, where the tax was "for the privilege of exercising its franchise", as nothing appears to be said about engaging in business.

However, it is our view that the nature and extent of this enactment should not be determined upon an examination of the title alone, and that it is necessary that we look to the substance of the act as well. We take it that the title is quite

properly to be considered a part of an act, particularly where it is a constitutional requirement that every act have a title, as is true in this state. Art. IV, Sec. 16, N. M.Const. See, also, note in 37 A.L.R. 927.

This court has stated that "in construing statutes, if the meaning thereof is doubtful, the title, if expressive, may have the effect to resolve the doubts by extension of the purview or by restraining it, or to correct an obvious error." State ex rel. Sedillo v. Sargent, 24 N.M. 333, 171 P. 790, 791. And in State v. Moore, 40 N.M. 344, 59 P.2d 902, 903, it was stated that titles to acts "are an aid to determine the legislative intent and to resolve any doubts as to their meaning."

No one would assert that legislation should be interpreted in the light of the title, to the complete exclusion of the obvious meaning of words used in the enactment proper, yet in effect, this is what appellant would have us do in the instant case, by contending that the words "engaged in any business" contained in Section 2 of the act are not significant and should to all intents and purposes be disregarded. With this view we cannot agree. It is our conclusion that the act is clearly an excise tax on the right of a corporation to carry on its business. From the decisions already cited it is clear that the language "engaged in any business" has a clear and well understood meaning when used in legislation of this type. In Flint v. Stone Tracy Co., supra, it was said: "'Business' is a very comprehensive term

and embraces everything about which a person can be employed * * *" and again, it is "'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' * * * We think it is clear that corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings, making investments of profits, or leasing ore lands and collecting royalties, managing wharves, dividing profits, and in some cases investing the surplus, are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law."

See, also, Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428.

The tax in the instant case accordingly is a franchise tax. 61 C.J. 252, § 241; Home Ins. Co. v. New York, 134 U.S. 594, 10 S.Ct. 593, 33 L.Ed. 1025; Southern Pacific Co. v. State Corporation Commission, 41 N.M. 556, 72 P.2d 15.

The rights and privileges upon which such a tax is laid are by grant of the state, and as such are taxable by it. That the instant tax is payable only when the corporation is "engaged in any business" in no way affects the nature of the tax. This is a tax upon the privilege, due when the corporation having such privileges and rights exercises the same by

engaging in business and not otherwise. In this connection we find it to be most like the law interpreted in People ex rel. Lehigh & N. Y. R. Co. v. Sohmer, supra, and also approve the language of Justice Cardozo, dissenting in the case of Anglo-Chilean Nitrate Sales Corp. v. State of Alabama, supra, quoted above, and cited to us by appellant.

In Lowden v. State Corporation Commission, supra, Mr. Justice Sadler said: "In my view, the tax is essentially on the enjoyment of the privilege, the exercise of the corporate franchise, rather than upon the mere privilege itself." We now say that the tax is on the privilege when exercised, which is in effect the same thing, because without its being exercised there can be no liability for the tax.

In passing, we might point out that various franchise tax acts, more or less comparable, have received differing interpretations as to their nature from different courts. The late Mr. Justice Cardozo has clearly pointed out the situation in this regard in his opinion in the case of Michigan v. Michigan Trust Co., supra, where he had the following to say [286 U.S. 334, 52 S.Ct. 514, 76 L.Ed. 1136]:

"The tax is laid upon the corporation 'for the privilege of exercising its franchise and of transacting its business within this state.' Whether a corporation does exercise its franchise or transact its business within the meaning of a statute so framed when it does business through a receiver is a subject on which much subtle argument has been expended by state and federal courts. Distinctions have been drawn between receivers appointed to carry on the business of a corporation with a view to the continuance of its corporate life, and receivers appointed in aid of the dissolution of the corporation or the liquidation of its business. See, e. g., Collector of Taxes v. Bay State St. Ry., 234 Mass. 336, 125 N.E. 614; Ohio v. Harris [144 C.C.A. 174] 229 F. 892, 901. Other distinctions have been drawn between taxes on a franchise to exist as a corporation and a franchise for transacting business, or, as many of the cases put it, between a franchise to 'be' and a franchise to 'do.' See, e. g., Cobbs & Mitchell v. Corporation Tax Appeal Bd., 252 Mich. 478, 481, 233 N.W. 386. Even where the tax is on a franchise to 'do,' there is wide diversity of judgment. The wording of some statutes has been read by some courts as importing the doing of business in the usual course by agents and officers appointed in the usual way. United States v. Whitridge, 231 U.S. 144, 149, 34 S.Ct. 24, 58 L.Ed. 159 [162]. Wording only slightly different has been thought by other courts to include the operations of a business conducted by receivers. Central Trust Co. v. New York City & N. R. Co. 110 N.Y. 250, 18 N.E. 92, 1 L.R.A. 260; New York Terminal Co. v. Gaus, 204 N.Y. 512, 98 N.E. 11; In re United States Car Co. 60 N.J.Eq. 514, 43 A. 673; Armstrong v. Emmerson, 300 Ill. 54, 132 N.E. 768, 18 A.L.R. 693; People of State of New York v. Hopkins [2 Cir.], 18 F.2d 731. Other wording not unlike has

been held to import the imposition of a burden on the mere privilege to 'do,' though no business was in fact transacted by the directors or by any one (In re G. H. Hammond Co., 246 Mich. 179, 224 N.W. 655; New York v. Jersawit, 263 U.S. 493, 495, 44 S.Ct. 167, 68 L.Ed. 405 [406]), a construction whereby the tax on the privilege to do becomes closely assimilated, in respect of domestic corporations, to one on the privilege to be. In re G. H. Hammond Co. supra. * * *"

It is thus apparent that if we are to give effect to the words "engaged in any business" contained in the body of the act in determining its application, we cannot escape the conclusions as hereinbefore expressed; and likewise, if we are to give effect to the language contained in the title to the act, in determining the nature of the tax imposed, the results announced are inescapable.

Having so determined, it becomes necessary for us to pass to the second point raised on this appeal, and that is, was the corporation in the instant case "engaged in any business" during the year 1937, so as to be liable for the tax?

In the instant case appellee did nothing except such acts as were necessary to retain its corporate existence, with two possible exceptions, viz: it borrowed money to pay its taxes, and it filed a notice to hold an unpatented placer mining claim pursuant to U.S.C.A. Title 30, Section 28a note.

A long line of federal decisions holds that merely doing acts necessary to maintain corporate existence, and holding of property, and receiving and distributing proceeds of such property, does not result in engaging in business so as to have liability attach. United States v. Emery, Bird, Thayer Realty Co., supra; McCoach v. Minehill & S. H. R. Co., supra. See, also, Von Baumbach v. Sargent Land Co., supra, where the following is said [242 U.S. 503, 37 S.Ct. 204, 61 L.Ed. 460]: "It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

New York has so held, People ex rel. Butterick Co. v. Gilchrist, 241 N.Y. 591, 150 N.E. 567, affirming 213 App.Div. 533, 211 N.Y.S. 75; People ex rel. Lehigh & N. Y. R. Co. v. Sohmer, supra.

To like effect are the holdings in Georgia, Harrison v. Forsyth Hunter Co., 170 Ga. 640, 153 S.E. 758, and Norman v. Southwestern R. Co., supra; and in Alabama, State v. Anniston Rolling Mills, 125 Ala. 121, 27 So. 921. Massachusetts has so held. Attorney General v. Ware River R. Co.,

233 Mass. 466, 124 N.E. 289; Attorney General v. Boston & A. R. Co., 233 Mass. 460, 124 N.E. 257; and in Vermont, State v. Bradford Sav. Bank & Trust Co., 71 Vt. 234, 44 A. 349. See, also, annotations in 40 A.L.R. 1451 and in 98 A.L.R. 1511.

Appellant cites the State of Arkansas as authority for a contrary rule. An examination of the case cited discloses that during the year for which the tax was levied the corporation transferred certain of its property to another corporation for the purpose of effecting a loan, which would be advantageous to the corporation taxed, and also that the court based its opinion, at least partially, on the fact that the tax was based on the amount of capital stock "employed" in the State, thus disclosing, as the Court saw it, that the legislature considered the employment of capital stock as constituting the doing of business under its franchise. In addition the Court looked to another statute for support of its conclusions.

We quote from the opinion in Arkansas Anthracite Coal Co. v. State, 149 Ark. 28, 231 S.W. 184, 185, as follows: "The purpose is to exact the payment of a tax on the exercise of the franchise * * * and a corporation necessarily exercises its franchise in the investment of its capital in other property, for it derives its authority to make the investment from the franchise granted by the state. * * * A corporation may have been duly organized and may remain or become inactive and dormant, but if it functions at all it is,

as before stated, alive and active. This view of the meaning of the statute is strengthened by the fact that the tax is laid according to the amount of capital stock 'employed' in this state, which shows that the employment of capital stock was construed as constituting the doing of business in the exercise of the franchise."

Appellant also cites the case of Carlos Ruggles Lumber Co. v. Commonwealth, 261 Mass. 450, 158 N.E. 899, wherein it was held that a corporation actively engaged in buying and selling lumber in other states than Massachusetts, but organized under the laws of Massachusetts, having its only office there, and carrying on all of its business from there, was engaged in business in Massachusetts, so as to be liable for the tax. The difference between that case and this is obvious. In addition to this it might be pointed out that the Court did not mention the case of Attorney General v. Boston & A. R. Co., supra, or Attorney General v. Ware River R. Co., supra, decided just eight years before, in which it held that doing of such acts as were necessary to maintain corporate existence, receiving lease money and distributing it as dividends did not constitute "doing business for profit."

Also cited is the case of Fore River Shipbuilding Corp. v. Commonwealth, 248 Mass. 137, 142 N.E. 812, 813. From the following quoted from the decision it is apparent that the rule of law applied in Massachusetts is the same as in the other states cited, and that the activities of the

corporation were in excess of those which might be described as for the mere purpose of retaining its property and corporate existence. It was engaged in fulfilling certain contracts, either itself or through an agent. We quote from the decision: "The governing statute imposes an excise only upon corporations which are carrying on or doing business. Mere possession of the franchise to be a corporation is not made subject to this tax. * * * It is the carrying on and doing of business alone upon which is levied the present excise. It may be assumed that, when a corporation has leased all its property and assets and does nothing more than to receive and distribute the rental among its stockholders, it is not carrying on or doing business. [Citing cases.] The petitioner was doing much more. It was the principal in its contracts with the government of the United States."

The case of Springdale Finishing Co. v. Commonwealth, 242 Mass. 37, 136 N.E. 250, was a case where the corporation had been actively engaged in doing all the things for which it was organized, during the period for which the tax was assessed, and consequently is not in point.

The cases of Rhode Island Hospital Trust Co. v. Rhodes, 37 R.I. 141, 91 A. 50, and Commonwealth v. Wilkes-Barre & H. R. Co., 251 Pa. 6, 95 A. 915, are both cases where holding companies organized for the purpose of dealing in the holding of stocks, bonds, and securities did all the things for which they were organiz-ed, and were held to be doing business in the states where such activities were carried on.

Quoting from these two cases: "While we would not hold the company is bound to do business somewhere, and therefore by a process of elimination it must be doing business in Pennsylvania, it does appear defendant is engaged in the exercise of one of the purposes for which it was incorporated, namely, buying and holding the stock and bonds of certain Pennsylvania corporations, and is thus, in effect, operating these companies as one of its objects of incorporation." Commonwealth v. Wilkes-Barre & H. R. Co. 251 Pa. 6, 95 A. 915, 916; and "The test under the law was whether the corporation exercised any of the functions, powers, or franchises which it was intended to perform, or was engaged in the transaction of the business or any part thereof which it was organized to transact." Rhode Island Hospital Trust Co. v. Rhodes, 37 R.I. 141, 91 A. 50, 58.

However, these cases are not in point, since the appellee corporation was one organized for mining and the extracting of metals, none of which things were done during 1937. See annotation in 98 A.L.R. 1511, as to when holding companies are considered to be within the taxing statutes.

From all the foregoing it should be clear, that under the authorities a corporation which does only those things which are necessary to retain its property intact, and to maintain its corporate existence, is not "engaged in any business" so as to be

liable for a tax such as the one levied by Chapter 116, Session Laws of 1935.

We suggested that the borrowing of money to pay taxes or the filing of notice to hold an unpatented placer mining claim pursuant to U.S.C.A. Title 30, Sec. 28a note, might be activities outside of the sphere which could be described as for the purpose of retaining its property or .corporate status. However, if taxes could be paid out of income, is there any difference in the nature of the act if money is borrowed when no income is available? It is clear that the action was not one looking to a profit, but was purely for the purpose of retaining the property of the corporation intact. It is comparable to the purchasing of insurance on property owned by the corporation, which action was held not to be engaging in business in the case of State v. Anniston Rolling Mills, supra.

We are of the opinion that the same thing is true of the notice filed pursuant to U.S.C.A. Title 30, Sec. 28a note. The notice is required in order for the corporation to have exemption from the annual assessment work, otherwise required by law to be performed on unpatented placer claims. In effect, it is no different from the payment of taxes to retain property, and cannot, under the decisions hereinbefore cited, be held to be an activity in furtherance of the corporate purposes, or looking to a profit.

The Attorney General suggests in passing that if it is concluded that the tax is only payable when a corporation is actively engaged in operations looking to a profit, the administrative difficulties in connection with it will be multiplied. This may or may not be true, but even if it is true, the problem is one for the legislature and not for the Court.

It is also pointed out by the Attorney General that a corporation may file a certificate of suspension under Sec. 32-149 (6) N.M.Stat.Ann.1929, when it is inactive, and thus escape the tax. Even though we recognize that this is true, it could not result in a corporation not engaged in business being liable for a tax which attaches only to corporations "engaged in any business," even though the corporation did not avail itself of the means at hand for being declared inactive under said Section 32-149 (6).

In view of all the foregoing, we are of the opinion that the ruling of the trial court was correct, and that its order dismissing the complaint was proper, and should be affirmed, and it is so ordered.

ZINN and SADLER, JJ., concur.

BRICE, Justice (dissenting).

The titles to legislative acts are made part thereof by Sec. 16 of Art. 4 of the State Constitution, which is:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed * *; but if any subject is embraced in any act which is not expressed in its title, only so

much of the act as is not so expressed shall be void * * *."

"Where the constitution of the state provides that each act of the legislature shall relate to but one subject, which shall be expressed in the title, the effect is to make the title a part of the enactment, * * *. In this case, it is very clear that the title may be resorted to as an aid in the interpretation of the statute, and that it will be entitled to greater weight than belongs to it in the absence of this constitutional provision; since it must be presumed that the mind of the legislature was directed to the title no less than to the provisions of the enacting clause. * * * But if the constitution requires it to express the subject of the act this objection is removed. 'The constitutional mandate that the object of every law shall be expressed in its title has given the title of an act a two-fold effect. It has added additional force to the title as an indication of legislative intent in aid of the construction of a statute couched in language of doubtful import, and it also operates as a constitutional limitation upon the enacting part of the law.'" Black on Interpretation of Laws, 2d Ed., pages 250–251, Ch. 6, § 83.

"Titles to legislative acts have, in some of the states, come to possess very great importance, by reason of constitutional provisions which not only require that they shall correctly indicate the purpose of the law, but which absolutely make the title to control and exclude from effect and operation as law everything which is incorporated in the body of the act but is not within the purpose indicated by the title. Under such provisions, the title is a part of the act and should be construed as such in determining the subject designed to be regulated by the act." 25 R.C.L. § 267, "Statutes".

"In such jurisdictions as require by constitutional provision the expression of the subject of the act in the title thereof, the title is a part of the act to be considered in construing it * * *" 59 C.J. "Statutes" § 599.

See annotations in 37 A.L.R. pp. 947 et seq. The writer of this annotation stated: "The preponderance of authority, it will be observed, is very decidedly in favor of an affirmative answer to this question (whether the title is a part of the act). It is difficult to perceive any satisfactory ground upon which a definite statement which the organic law requires a legislature to prefix to a statute, and which not only purports to specify the contents of the formal enacting clauses, but also operates so as to invalidate any of those clauses which are outside the scope indicated by it, can be placed in any other category than that of a portion of the statute itself." pp. 948, 949. Also see: State ex rel. City of Mobile v. Board of Revenue and Road Com'rs, 202 Ala. 303, 80 So. 368; Commonwealth v. Barney, 115 Ky. 475, 74 S.W. 181; Dart v. Bagley, 110 Mo. 42, 19 S.W. 311; People, etc., v. Davenport, 91 N.Y. 574; State v. Robinson, 32 Or. 43, 48 P. 357; Lovett v. Ferguson, 10 S.D. 44, 71

N.W. 765; Missouri, K. & T. R. Co. v. Mahaffey, 105 Tex. 394, 150 S.W. 881; People v. Fensky, 297 Ill. 440, 130 N.E. 689; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045, 17 Ann.Cas. 576.

If the title is a part of the act, then following a recognized rule of construction, the whole act (including the title) should be construed together when necessary to determine the legislative intent. Not all courts agree that such constitutional provision gives any higher significance to the probative strength of titles in construing acts; but I believe that it is supported by reason as well as good authority. While this court has not specifically passed upon the question, such is the effect of its holding in State ex rel. Sedillo v. Sargent, 24 N.M. 333, 171 P. 790, 791; wherein, through Mr. Justice Roberts, we stated: "In construing statutes, if the meaning thereof is doubtful, the title, if expressive, may have the effect to resolve the doubts by extension of the purview or by restraining it, or to correct an obvious error."

The following cases seem to sustain this view:

"The caption is a part of the law, and must be considered in construing it. Cohn v. People, 149 Ill. 486, 37 N.E. 60, 23 L.R.A. 821, 41 Am.St.Rep. [304], 308; People v. Davenport, 91 N.Y. 574; 2, Lewis' Sutherland, Stat.Const., 2d Ed., § 340, which we copy:

" 'The constitutional provision that no law shall embrace more than one subject, and requiring that to be expressed in the title, has given the title of legislative acts more importance. It is not, however, required or intended that the title shall contain a full index to all the contents of the law. It is permitted to be general in its terms, and therefore it will seldom occur that it will afford a clue to the intention when the text of the statute is uncertain. But the title of an act is now so associated with it in the process of legislation that when, in performing its constitutional functions, it affords means of determining the legislative intent, in cases of doubt, its help cannot be rejected for being extrinsic and extra-legislative. The language of an act should be construed in view of its title and its lawful purposes. Broad language should be confined to lawful objects.' The effect of the rule is that the title must have the same effect as if it were in the body of the bill." Missouri, K. & T. R. Co. v. Mahaffey, 105 Tex. 394, 150 S.W. 881, 883.

"It [the title] is essentially a part of the act, not only because it has been selected and adopted by the Legislature as one of the tests of their meaning as expressed in the bill, but because the Constitution has made it a part, and the controlling part, of the law to which it applies. It is therefore not only useful, in affording a fair index of the legislative intent in case of ambiguity in the context, but it must be read in connection with the remainder of the act—as a part of it—in determining what is the law." Commonwealth v. Barney, 115 Ky. 475, 74 S.W. 181, 182.

"* * * We have herein set out the title of the two acts. These are an aid to determine the legislative intent and to resolve any doubts as to their meaning." State v. Moore, 40 N.M. 344, 59 P.2d 902, 903.

"In ruling as to the precise meaning of the language employed in a statute, nothing, as we have said before, is more pertinent towards ascertaining the true intention of the legislative mind in the passage of the enactment than the Legislature's own interpretation of the scope and purpose of this act as contained in the caption. The caption of an act of the Legislature is properly an index to the contents of the statute as construed by the Legislature itself—a summarizing of the act made right at the time when the discussion of every phase of the question is fresh in the legislative mind." Wimberly v. Georgia S. & F. R. Co., 5 Ga. App. 263, 63 S.E. 29, 30.

"Under a constitutional provision, such as exists in this state, requiring the subject of the legislation to be expressed in the title (section 19, art. 4), that portion of an act is often the very window through which the legislative intent may be seen." State ex rel. Western Const. Co. v. Board of Com'rs of Clinton County, 166 Ind. 162, 76 N.E. 986, 996.

"Since every act must have a title expressing the subject-matter, the title necessarily becomes a part of the act, and offers valuable help in construing the act and determining the legislative intent." Eugene School Dist. No. 4 v. Fisk, 159 Or. 245, 79 P.2d 262, 267.

"In view of the provision of paragraph 4 of section 7 of article 4 of the State Constitution that 'every law shall embrace but one subject, and that shall be expressed in the title,' the title is a part of the act, and is of necessity to be regarded in construing it." Addotta v. Blunt, etc., 114 N.J.L. 85, 176 A. 105, 106.

"The title is in a legal sense a part of every statute and may be considered in determining its construction." Wheelwright v. Trefry, 235 Mass. 584, 127 N.E. 523, 524, 37 A.L.R. 920.

"In construing an act, we must look both to the title and the body of the act. We think the title of the act, when considered with the body, gives a clear idea of the intention of the Legislature." State ex rel. 1625 East Washington Realty Co. v. Markey, 212 Ind. 59, 7 N.E.2d 989, 991.

The Constitution of New York requires that the subject of all bills of local or private nature shall be expressed in the title. It is said in People v. Davenport, 91 N.Y. 574: "It was formerly held [in England] that the title of an act was no part of the act itself, and was of little legislative import, but by the Constitution of this State it is made, in some cases [local and private bills], of controlling importance * * *."

For decisions of the English, Federal and state courts on the question, and application of the rules to specific classes of legislation, see annotation in 37 A.L.R. at pages 927 et seq.

The title of the act is: "An Act to Levy an Annual Franchise Tax on Domestic and Foreign Corporations for Profit Doing Business in This State, for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State; to Provide for Reports to the State Corporation Commission by Said Corporations, and to Provide for the Determination and Collection of Said Tax; to Provide for Penalties for Failure to Comply with the Provisions of This Act; to Provide for the Payment of the Same into the 'Relief Fund', and to Repeal Chapter 10, of the Laws of 1935." Laws 1935, c. 116.

That part of the purview levying the tax is: "Every domestic or foreign corporation for profit engaged in any business in this state, beginning with the calendar year 1935, shall pay to the Corporation Commission on or before the first day of May of each year, an annual franchise tax at the rate of One ($1.00) for each One Thousand ($1,000.00) Dollars, or fraction thereof, of the par value of that proportion of its authorized and issued capital stock represented by its property and business in this state, to be assessed by the State Corporation Commission as provided in this Act. The tax hereby imposed shall be in addition to all property taxes and other taxes and fees now or hereafter required by law."

The words "franchise tax" as applied to corporations have more than one meaning. Some of the definitions are as follows: A tax on intangible property, Chesapeake & O. R. Co. v. Commonwealth of Ky., 190 Ky. 552, 228 S.W. 15; Arkansas & Memphis Ry. Bridge & Terminal Co. v. State ex rel. Atty. Gen., 174 Ark. 420, 295 S.W. 378; it is not a tax on property but on the right to do business, State, etc., v. State Tax Comm., 282 Mo. 213, 221 S.W. 721; it is a tax on the privilege of exercising the franchise of the corporation, whether exercised or not. Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, and New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405; it is a tax for the transaction of business within a state. People, etc., v. Sohmer, 217 N.Y. 443, 112 N.E. 181; McCoach v. Minehill, etc., R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; it is a tax for the continuation of a corporate charter; that is, the right "to be" in contradistinction to the right "to do." People of State of New York v. Hopkins, 2 Cir., 18 F.2d 731; Marsden Co. v. State Board of Assessors, 61 N.J.L. 461, 39 A. 638.

Now what is the purpose of the franchise tax that is levied by the terms of the statute quoted? It is a franchise tax, so it is stated in sec. 2 of the act; but this does not identify the nature, or specific purpose, of the tax. If the title may be construed as a part of the act, it is made perfectly plain that it is an annual franchise tax levied "for the Privilege of Carrying on, Doing Business, or the Continuance of its [the corporation's] Charter Within This State."

But we need not hold the title to be a part of the act, and yet reach the same conclusion. The titles to acts of Congress, and of legislative acts of a number of the

states, are only formal, and are not required by constitutional mandate. In such jurisdictions the title is no part of an act; yet it is generally held that, while not controlling, recourse may be had to the title to clear ambiguities, or resolve doubts as to the meaning of words. Fairport, P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446; Rector, etc., of Holy Trinity Church v. United States, 143 U. S. 457, 12 S.Ct. 511, 36 L.Ed. 226, 228; In re American Surety Co., 319 Pa. 549, 181 A. 364; Thomas v. Buchanan County, 330 Mo. 627, 51 S.W.2d 95. In fact I have resorted to the title of the act only for the purpose of making definite and certain the intent of the legislature in the use of the words "franchise tax;" not to add to or take from the purview of the act.

It is perfectly clear that the legislature *intended* to levy a franchise tax "for the Privilege of Carrying on, Doing Business, or the Continuance of its [the corporation's] Charter Within This State;" that is upon the right or privilege to do business in the state, or the continuation of the corporation's charter within the state.

The majority assert that the tax in question is a privilege tax; but that it is only levied against a corporation when actively engaged in the principal business for which it was organized. In other words, the majority hold that it is a privilege tax, but that it is not a tax upon the privilege, but upon the doing of business; which is not a privilege tax.

Certain decisions are cited from other jurisdictions, which lend no aid to the construction of the New Mexico statute, unless they assist in construing the words "engaged in any business." The Federal statute is entirely unlike that of New Mexico. The Act of 1909, construed in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 346, 55 L.Ed. 389, Ann.Cas. 1912B, 1312, reads: "That every corporation, * * * organized for profit * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars, received by it from all sources during such year, * * *."

The court stated:

"The tax is to be equivalent to 1 per cent of the entire net income over and above $5,000 received by such corporation or company from all sources during the year. * * *

"It is therefore apparent, giving all the words of the *statute* effect, that the tax is imposed not upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business, and with respect to the carrying on thereof, * * *."

No other conclusion was possible, as the tax was imposed upon the net income above $5,000. There could be no net in-

come in the absence of the transaction of business.

The Georgia statute construed by the courts of that state in the cases cited provides for a "gross receipts" tax, not at all similar. No tax could be levied in the absence of income from its business.

The cases cited from the Massachusetts courts are based upon a statute very similar to the Federal statute. Taxes are levied "with respect to the carrying on or doing of business", G.L.Mass. c. 63, § 32, by the corporation within the commonwealth. Carlos Ruggles Lumber Co. v. Commonwealth, 261 Mass. 450, 158 N.E. 899.

Nor does Hardwick Sav. Bank & Trust Co. v. Drenan, 71 Vt. 289, 44 A. 347, cited by the majority, sustain their conclusion.

The tax levied under the Vermont statute against trust companies is "At the rate of 7⁄10 of one percent annually upon the average amount of its deposits." Such company must necessarily be transacting business if it is liable to the tax. The trust company was in the hands of a receiver and it was held that it was not liable to the tax unless the corporation itself was transacting business. This does not seem to. be in harmony with Lowden et al. v. State Corporation Commission, 42 N.M. 254, 76 P.2d 1139; nor with Lehigh Valley R. Co. v. Martin, Tax Com'r, 3 Cir., 100 F.2d 139, which seems to support our conclusion in the Lowden case.

The only other cases in support of the majority's conclusion are cases from New York, construing a statute of that state, to which I will hereafter refer.

The majority opinion is bottomed upon a construction of the words, "engaged in any business in this state;" which it is asserted means the carrying on of the principal business for which the corporation was chartered, to-wit: that of mining and the extraction of metal from ore. The majority state:

"Only on one basis could a different rule be contended for, and that must be based on the fact that the title to the act, by its language purports to levy a tax 'for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State.' If there was nothing contained in the enactment which led us to a contrary conclusion, we might, basing our conclusions on the language of the title, arrive at the same result as the United States Supreme Court did in the case of N. Y. v. Jersawit, supra, where the tax was 'for the privilege of exercising its franchise', as nothing appears to be said about engaging in business.

"However, it is our view that the nature and extent of this enactment should not be determined upon an examination of the title alone, and that it is necessary that we look to the substance of the act as well."

But their conclusion was based entirely upon definitions of the words "engaged in business" found in the decisions of the courts of a number of the states, con-

struing statutes, without giving the slightest weight to the title (which is a part of the act), or to the fact that in nearly every instance the decisions cited as authority had construed statutes quite unlike those of New Mexico, and from other language of the statutes no other conclusion could have been reached.

The Supreme Court of the United States, in Flint v. Stone Tracy Co., supra, in construing the Federal statute, stated: "While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company. It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business, and with respect to the carrying on thereof, * * *."

The question, then, is not the meaning of the words "engaged in business," as used in statutes of other states; but the meaning of "every domestic * * * corporation · * · * * engaged in *any* business in

this State," in connection with the words "for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter· Within This State," as intended by the New Mexico legislature.

As suggested by the majority, if we looked to the title, and ignored the words "engaged in any business in this State," we would conclude that the tax was upon the privilege, and the continuance of its charter; to be paid whether any business was transacted or not. But the question is what did the legislature intend by the use of the language in the title and in section 2 considered together?

The majority's comment on and quotation from the Arkansas case of Arkansas Anthracite Coal Co. v. State is misleading, as I will endeavor to show.

The original New Mexico act was Ch. 100, N.M.L.1919. It is apparent that it and the act of 1935 are an adaptation of the Arkansas statutes to our conditions. Much of the New Mexico act is a literal copy of the Arkansas statutes (see Arkansas Acts, 1911, p. 67; 1913, p. 518, and 1917 p. 392. Also Digest of the Statutes of Arkansas 1937, Sec. 13488 et seq).

The statutes of Arkansas, material to a decision and which were construed by the Supreme Court of that state in cases hereafter cited, are as follows: "Each corporation organized and doing business under the laws of this State, for profit, shall make a report in writing to the Arkansas Tax Commission annually on or·

before June 1, on such forms as the commission may prescribe. The report shall be signed and sworn to before an officer authorized to administer oaths by the president, vice president, secretary or general manager of the corporation." Sec. 9799, Ch. 168, Ark.Sts.1921.

Sec. 9800 provides for a report quite similar to that required by the New Mexico statute.

Sec. 9801 is:

"Upon the filing of the report provided for in §§ 9799 and 9800, the commission, after finding such report to be correct, shall on or before July 1, report to the Auditor of State who shall charge and certify to the Treasurer of State for collection as herein provided for from such corporation a tax of one-tenth of one per cent. upon that part of its subscribed and issued and outstanding capital stock employed in this State, except as hereinafter provided." Sec. 9801, Ch. 168, Ark. Sts.1921.

"Each foreign corporation doing business in this State, for profit, and owning or using a part or all of its capital or plant in this State, and subject to compliance with all other provisions of law, and in addition to all other statements required by law, shall make a report in writing to the Arkansas Tax Commission annually, on or before June 1." Sec. 9802, Ch. 168, Ark.Sts.1921.

Sec. 9803 provides for the contents of such report.

"Upon the filing of the report provided for in §§ 9802 and 9803, the commission, from the facts thus reported and any other facts coming to its knowledge bearing upon the question, shall determine the proportion of the authorized capital stock of the corporation represented by its property and business in this State on or before July 1, and shall report the same to the Auditor of State, who shall charge and certify * * * annually from said corporation * * * for the privilege of exercising its franchise in this State, a tax on one-tenth of one per cent. each year upon the proportion of the subscribed, issued and outstanding capital stock of the corporation represented by property owned and used in business transacted in this State." Sec. 9804, Ch. 168, Ark.Sts. 1921.

"The Secretary of State shall prepare and keep a correct list of all corporations subject to the provisions of §§ 9799 to 9819, inclusive, and engaged in business within the State, and shall on April 15, each year, certify a copy of this list to the Arkansas Tax Commission, * * *." Sec. 9808, Ch. 168, Ark.Sts.1921.

These statutes were amended in some particulars in 1925 (Sts.Ark.1937, Secs. 13488 et seq.), but immaterial to a decision of the question here being considered.

We conclude from these statutes that domestic corporations "organized *and* doing business under the laws of this State (Ark.)," and foreign corporations "doing business in this State * * *

and owning or using a part or all of its capital or plant in this State," are subject to the tax; and that the tax is imposed "for the privilege of exercising its (the corporation's) franchise" in the state. If the words "doing business in this State," had been controlling it may be that the Supreme Court of Arkansas would have reached the same conclusion that the majority has in this case. But that court did not overlook the fact that the tax *was not levied* on account of, or with respect to "doing business," in the state, but for the privilege of exercising its franchise *in the* state. We have the exact question here; except that our statute applies to all corporations "engaged in *any* business" in the state.

The Supreme Court of Arkansas, in a number of decisions, has held that the meaning of "doing business" as used in the statutes from which I have quoted, had no reference to the prosecution of the business for which the corporation was chartered, but that the tax was exacted for the exercise of the franchise and necessarily must be paid by all corporations that were not entirely dormant. I quote from them, as follows:

"Our court has held that a corporation owes its existence to the state, and the right to enjoy this privilege is a subject of taxation; and that upon the power of the Legislature to impose such a tax there exists no restriction in our Constitution. In the case of a foreign corporation the tax or license is paid for the privilege of exercising its corporate powers in the state. Baker v. State, 44 Ark. [134] 138, and cases cited. * * *

"In the passage of the act in question, no doubt the Legislature had in mind the fact that the right or privilege to be or exist as a corporation, although a matter of value to the stockholders of the corporation, is not an asset of the corporation and transferable as such, and that its value cannot, under ordinary rules, be ascertained for the purpose of taxation as property; but, since it is a privilege or right granted by the state, a franchise tax may be imposed upon this right or privilege, for the purpose of raising revenue." St. Louis Southwestern R. Co. v. State ex rel., 106 Ark. 321, 152 S.W. 110, 112.

"The contention is that the corporations have been and are holding the property in which the capital stock is invested merely for the purpose of doing business in the future, and that this does not fall within the terms of the statute. Counsel argue that the words 'doing business' as used in the statute should be interpreted to mean activity in the prosecution of the business specified in the charter. We do not so interpret the statute. The purpose is to exact the payment of a tax on the exercise of the franchise. (St. Louis Southwestern R. Co. v. State ex rel., 106 Ark. 321, 152 S.W. 110), and a corporation necessarily exercises its franchise in the investment of its capital in other property, for it derives its authority to make the investment from the franchise granted by the state. It can-

not function at all except under the powers granted to it in the franchise. The statute applies to all active corporations—those which are functioning and not those which are dormant. A corporation must be both organized and active in order to be liable for the franchise tax. A corporation may have been duly organized and may remain or become inactive and dormant, but if it functions at all it is, as before stated, alive and active. This view of the meaning of the statute is strengthened by the fact that the tax is laid according to the amount of capital stock 'employed' in this state, which shows that the employment of capital stock was construed as constituting the doing of business in the exercise of the franchise. * * * The decisions of the Supreme Court of the United States cited by counsel are not applicable, for they relate to a federal statute imposing an excise tax on the net income of corporations doing business in any of the states or territories of the United States." Arkansas Anthracite Coal Co. v. State, 149 Ark. 28, 231 S.W. 184, 185.

" ' * * * all of the assets of the defendant are located in the state of Arkansas. The market value of all of the property of the defendant is $92,500. It is further agreed that the defendant has not been actively engaged in business, and its property consists of largely cut-over land, lying and being situated in Cleveland, Grant, and Jefferson counties, and said land is for sale by the defendant, and that the company has no agents in Arkansas authorized to sell said lands, and the lands which have been sold were sold and conveyed from Chicago, Ill.' * * *

"It admits that it had a franchise or authority to do business in this state for the years mentioned, but denies that it did any business under said franchise within the meaning of the act requiring foreign corporations to make report and pay the tax. Section 9802 of Crawford & Moses' Digest reads as follows:

" 'Each foreign corporation doing business in this state, for profit, and owning or using a part or all of its capital or plant in this state, and subject to compliance with all other provisions of law, and in addition to all other statements required by law, shall make a report in writing to the Arkansas tax commission annually, on or before June 1. Act March 3, 1913, p. 518, § 4.'

"This section was amended by section 5 of Act 236 in 1925, so as to require the making of the report on or before March 1st, instead of June 1st. By section 9803, the form of the report is provided for. By section 9804 the Railroad Commission is directed to determine from the report the proportion of the authorized capital stock of the corporation represented by its property and business in this state on or before July 1st, and shall report the same to the auditor of state, or shall charge and certify to the treasurer of state on or before July 10th, for collection—

" 'annually from said corporation, in addition to the initial fee otherwise provided by law, for the privilege of exercising its

franchise in this state, a tax on one tenth of one per cent. each year upon the proportion of the subscribed, issued and outstanding capital stock of the corporation represented by property owned and used in business transacted in this state. Act February 15, 1917, p. 392, § 2.' * * *

"It will thus be seen that a foreign corporation is required, 'for the privilege of exercising its franchise in this state,' to pay a franchise tax of 'one-tenth of 1 per cent. each year upon the proportion of the subscribed, issued and outstanding capital stock of the corporation represented by property owned and used in business transacted in this state.' * * *

"It is not contended by the appellee that the act authorizing and directing the collection of a franchise tax is unconstitutional, but its contention is that it is not doing business in the state, and therefore is not subject to the tax. The answer to that proposition is that the tax is not based upon the doing of business in the state, but the right or privilege of doing business in the state. * * *

"We are therefore of the opinion that the tax in question was a valid exercise of the powers of the state, and was intended to be a tax on 'the privilege of exercising its franchise in this state.' * * *

"If the appellee desires to avoid the payment of its franchise tax in this state, it may do so by surrendering to the state its franchise or right to do business herein, and either hold its property in its own name, or transfer it in trust to another to be held for it. But, so long as it holds its franchise and has from the state of Arkansas the right to do business herein, it is liable for the tax. * * *" State ex rel. Attorney General v. Chicago Land & Timber Co., 173 Ark. 234, 292 S.W. 98, 100.

"Appellant's first contention is that it is engaged in no sort of business in the state of Arkansas. The stipulation, however, entered into between the parties, provides that the bridge company is a corporation chartered, organized, and existing under the laws of the state of Tennessee, authorized to do business in the state of Arkansas. * * *

"This court has repeatedly held that in case of a foreign corporation, the tax or license is paid for exercising its corporate powers within the state. The bridge company in this case has the privilege of exercising its corporate powers in this state, and is daily engaged in business in repairing and maintaining the bridge and approaches.

"But this court has recently held that the tax is not based upon the doing of business in the state, but the right or privilege of doing business in the state. State ex rel. Attorney General v. Chicago Land & Timber Co. [173 Ark. 234] 292 S.W. 98." Arkansas & Memphis Ry. Bridge & Terminal Co. v. State ex rel. Attorney General, 174 Ark. 420, 295 S.W. 378, 379.

I agree that the case of People ex rel. Lehigh & N. Y. R. Co. v. Sohmer, 217 N. Y. 443, 112 N.E. 181, 183, cited in the majority opinion, supports appellee. But

Judge Seabury, in his dissenting opinion in that case (concurred in by Judge Pound), was of the opinion that the corporation was liable to the tax, in that it had exercised its general franchise in the state, stating: "The tax imposed by section 182 of the Tax Law is imposed upon a corporation 'for the privilege of doing business or exercising its corporate franchises in this state.' The tax thus imposed has no relation to the special franchises which such a corporation may enjoy. The special franchises are assessed and taxed by a different method. The tax imposed by section 182 is solely upon the privilege of doing business or exercising its general franchise of the right to be a corporation in this state. The law imposes the tax not on the extent of its business, but merely upon the exercise of its general franchise in this state."

The difference between the two opinions in that case divides us here. The majority treat the exaction (notwithstanding statements to the contrary) as a tax upon the carrying on of business, while I assert that it is a tax on the privilege and for the continuance of the corporation's charter within the state. This conclusion is borne out by the provision that the failure to pay the tax or to make the statutory reports subject domestic corporations to dissolution and foreign corporations to the cancellation of its permit to do business in the state.

If the words "any business" have reference only to the business of mining, then it is in no sense a tax upon the privilege but a tax upon the actual doing of the principal business for which the corporation was organized. But having come to the conclusion that the tax is in fact a privilege tax, then the words "any business" should be resolved in favor of a construction that will in effect support that conclusion, if it can consistently be done.

I conclude that the words "any business" are not limited in meaning to the business of mining and the extraction of metal from ore; but have reference to any act of business by which the franchise of the corporation is exercised, and applies to all corporations that are not entirely inactive or dormant, and these are excluded because the tax would not be collectible if imposed.

The practical effect is the exaction of a privilege tax.

I have found no cases construing similar statutes, except those by the courts of New York and Arkansas. I prefer the disposition made of the question by the Supreme Court of Arkansas from whence comes our statute.

The appellee should be held liable to the tax.

BICKLEY, Chief Justice (dissenting).

I arrive at the same conclusion expressed by Mr. Justice BRICE but by a somewhat different route.

The majority seek to distinguish the Michigan decisions they cite as being relied on by the State by calling attention

to the fact that the Michigan statutes, Comp.Laws 1929, § 10140, imposed upon "every corporation [1] organized *or* [2] doing business [in Michigan]." (Emphasis mine.)

They also in discussion of the second point raised by the appeal, viz., "was the corporation in the instant case 'engaged in any business' during the year 1937, so as to be liable for the tax?" rely upon what may be said to be (numerically) the weight of judicial decisions to the effect that "merely doing the acts necessary to maintain corporate existence, and holding property, and distributing proceeds of such property does not result in engaging in business so as to have liability attach."

The contrary view said by appellant to be the sounder doctrine is sustained by decisions from the courts of last resort in Massachusetts, Rhode Island, Arkansas and Pennsylvania. There is much to be said in favor of the appellant's choice of doctrine. The argument of convenience arising from the administrative difficulties in pursuing the doctrine favored by the majority supports the Attorney General's position. Furthermore, as hereinafter again mentioned, the expense of maintaining the Corporation Commission, which involves visitorial and inquisitorial powers for the better governance of corporations in the exercise of their corporate franchises, suggests that the franchise tax is designed to in part defray such expense, and in most instances, the acts which are done by the corporation to maintain its corporate ex-istence, holding property, and distributing property, reports whereof are required to be made to the Corporation Commission, will be just as much a concern of the state and just as much a burden upon its revenues whether the corporation is "engaged in any business" as understood in the one sense or the other. However, what I or the other Justices may think is the sounder doctrine is of little concern except as it may be of some assistance in arriving at the intent of the legislature.

Keeping in mind the difficulties of construction of statutes of this sort, as expressed by Mr. Justice Cardozo in Michigan v. Michigan Trust Co., cited and quoted by the majority, I think it may be assumed that our legislature was conscious of these difficulties and informed as to the divergence of opinion when framing the title to the Act, and that the clause "or the continuance of its charter within this state" was inserted designedly.

It is a rule of statutory construction that all of the words and phrases of a statute must be considered in arriving at the intention of the legislature. It must be kept in mind that the first clause of the title to the Act is as follows: "An Act to Levy an Annual Franchise Tax on Domestic and Foreign Corporations for Profit *Doing Business in This State*." (Emphasis mine). The majority would doubtless concede that the clause in the title "Doing Business in This State" standing alone means the same thing as the clause in Sec.

2 of the Act as follows: "engaged in any business in this State."

This being so, anything which throws light on one of these clauses throws light on the other. Going back to the title again I think the words immediately following the phrase "Doing Business in This State" viz., "for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State", must be considered as qualifying and explanatory of the words immediately preceding.

To my mind, the phrase "or the Continuance of its Charter Within This State" has a meaning distinct from the preceding clause "for the Privilege of Carrying on, Doing Business" and is tantamount in effect to the word "organized" appearing in the Michigan statutes for purposes of construction. That is to say, the tax is upon "the Privilege of Carrying on, Doing Business" OR "the Continuance of its Charter Within This State". For emphasis I state the matter another way. The Michigan legislature intended to levy the tax upon corporations "organized" while our legislature evinced the intent to impose the tax upon corporations that desired to "stay organized."

Also the words "or the continuance of its charter within this state" seem to be an interpretative clause which indicates intention of the legislature to avoid the doctrine announced by some courts that merely doing such acts as are necessary to maintain corporate existence and holding property for the purpose of distributing

its avails is not engaging in any business. In other words, by this clause in the title "or the continuance of its charter within this state" the legislature chose the doctrine announced by the Massachusetts, Arkansas and other courts that *any* corporate activity or exercise of its charter privileges will amount to *engaging in business* so as to result in liability for the franchise tax. This view adds significance to the employment of the word "any" in the clause in Section 2 "engaged in *any* business in this State" as though the legislature, being conscious of the divergence of view as to the meaning of the phrase "doing business" and "engaged in business", sought by the employment of the word "any" to embrace doing of acts necessary to maintain corporate existence, holding property, and distributing the avails thereof, etc., as doing business within the legislative understanding.

By Sections 3 and 4 of the Act, every corporation for profit "engaged in business in this state" shall annually make and file with the Corporation Commission a report in such form as the Commission may prescribe, signed and sworn to by some of the corporate officers designated, which report shall show the name of the corporation; the location of its registered office in this state and the name of the agent therein and in charge thereof upon whom process against the corporation may be served; the names of all of the principal officers of the corporation; the date of the annual election of officers; the amount of authorized capital stock; the

amount of capital stock subscribed, the amount thereof issued and outstanding, and the amount of capital stock paid up; the nature and kind of business in which the corporation is engaged; the value of the property owned and used by the corporation in this state and where situated and the value of the property owned and used outside of this state and where situated; the total gross receipts derived from its property and business in this state and the total gross receipts from its property and business, both within and without this state during the preceding year; the change or changes, if any, in the above particulars made since the last annual report. By Sec. 9 of the Act, certain penalties are imposed for failure of corporations to make reports and it is further provided that the failure to make such reports shall be cause for dissolution of the corporation in case of domestic corporations, and cause for cancellation of the permit to do business in case of foreign corporations.

If the majority view is sound, then it seems to me corporations not "engaged in business in this state" as defined by the majority, that is, those corporations doing only the acts necessary to maintain corporate existence could fail and refuse to make the reports required by Secs. 3 and 4 of the Act without incurring the penalties prescribed upon the basis of the argument that the language of said sections is limited in its operation to such corporations only as are "engaged in business in this state" as that term is defined in the majority opinion. The exercise of corporate franchises by holding directors' meetings, election of officers, making reports, etc., is an important function to be performed by a corporation to secure a "Continuance of its Charter Within This State".

The important purposes to be served by the making of the reports required is apparent. The Act manifests an intention that the state shall exercise some supervisory control over corporations as long as they are exercising their franchises, whether they are actually carrying on the business purpose of making a profit or not. When they cease to exercise their franchises, in other words, when they become "dormant" so. as to no longer be required to perform any acts to maintain corporate existence, no tax is required.

It is a burden on the revenues of the state to receive, file, analyze and consider such reports. A purpose of the franchise tax doubtless is in part to pay these administrative expenses. If the corporation owns property, the state affords police protection for such property.

Appellant says in its brief:

"If it be held that a corporation such as appellee is not subject to the tax levied by Chapter 116, supra, administrative difficulties in enforcing the Act will be multiplied. It will be necessary for the taxing authorities to pass on innumerable fact situations to determine liability in any given case. If the tax paying corporation wishes to avoid liability, it may do so by dissolution or by filing a certificate of sus-

pension pursuant to Section 32-149(6), New Mexico Statutes Annotated, 1929 Compilation, which reads in part as follows:

" 'Whenever any corporation is no longer engaged in active business in this state, any two stockholders directors or officers thereof may unite in signing a statement to that effect, which statement may be filed in lieu of such annual report, and upon the filing of the same the state corporation commission shall be authorized to strike the name of such corporation from the list of live corporations in this state; but such action shall not be construed in any sense as a formal dissolution of such corporation, nor shall such corporation be relieved thereby from any outstanding obligation.' "

These are not mere arguments of convenience to demonstrate what the law ought to be. They indicate the legislative intent that every corporation "for the Privilege of Carrying on, Doing Business," or every corporation which desires a continuance of its charter within this state must pay a franchise tax. When so considered, I think "the tax on the privilege to do becomes closely assimilated * * to one on the privilege to be", and as an alternative that if the corporation does the acts which are necessary to a continuance of its right "to be" within this state it is "engaged in (any) business in this state".

For the foregoing and many of the reasons stated by Mr. Justice BRICE, I concur in his dissent.